# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| Jane RGC Doe 1; Jane MLG Doe 2; Jane LVB Doe 3; Jane GK Doe 4; Jane BC Doe 5; Jane AC Doe 6, a minor, by Next Friend John Doe AA; Jane JA Doe 7; Jane PH Doe 8, a minor, by Next Friend Jane Doe PJ; Jane SM Doe 9; Jane ME Doe 10; Jane KJ Doe 11; Jane RK Doe 12; Jane MPW Doe 13; Jane KN Doe 14; Jane KM Doe 15; Jane AC Doe 16, a minor, by her next friend L.C.; Jane M.N. Doe 17; Jane B.D. Doe 18; Jane L.D. Doe 19; Jane K.K. Doe 20; Jane C.T. Doe 21; Jane JJF Doe 22; Jane RAC Doe 23; Jane RAD Doe 24; Jane RAE Doe 25; Jane RAF Doe 26; Jane RAG Doe 27; Jane RAH Doe 28, a minor by her next friend C.S; Jane ALC Doe 29; Jane BH Doe 30; Jane DC Doe 31; Jane KRA Doe 32; Jane A.W. Doe 33; Jane A.G. Doe 34; Jane CP Doe 35; Jane TB Doe 36; Jane KB Doe 37; Jane MH Doe 38; Jane RS Doe 39; Jane NLF-2 Doe 40; Jane NLF-4 Doe 41; Jane SAF Doe 42; Jane BRS Doe 43, a minor by her next friend Jane BR Doe; Jane ANT Doe 44, a minor by her next friend Jane NT Doe; Jane ILH Doe 45, a minor by her next friend Jane LH Doe; Jane R.G. Doe 46; Jane TMB Doe 47; Jane MLM Doe 48; Jane MML Doe 49; and Jane MLJ Doe 50, <br><br> Plaintiffs, <br><br> v. <br><br> United States Olympic Committee, a federally chartered non-profit corporation; Lawrence F. Probst; Robert J. Bach; James M. Benson; Robert Bowlsby; Ursula M. Burns; Anita L. DeFrantz; Daniel L. Doctoroff; James L. Easton; John S. Hendricks; Nina M. Kemppel; Susanne D. Lyons; William C. Marlot; Mary R. McCagg; Steven M. Mesler; Dave W. Ogrean; Pisei Whitney Ping; Angela M. Ruggiero; Kevin M. White; Robert L. Wood; Scott Blackmun; Alan Ashley; and Larry Buendorf; <br><br> Defendants. | Case No. |

## COMPLAINT AND JURY DEMAND

Plaintiffs ("Plaintiffs") state for their Complaint ("Complaint") against the United States Olympic Committee ("USOC") and its responsible Officers and Directors ("Officers and Directors") and allege:

## I.    PRELIMINARY STATEMENT

1.    This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiffs as a result of the acts and omissions of the USOC, its Officers and Directors and its National Gymnastics Governing Board ("NGB") in failing to prevent the sexual assault, abuse, molestation, and nonconsensual sexual touching and harassment by Lawrence Gerard Nassar ("Nassar"), and other USOC/USA Gymnastics (USAG) Coaches, of hundreds of young female athletes, including Plaintiffs, many of whom were minors at the time they were sexually abused and harmed by the abuse.

2.    USOC/USAG Coaches and Nassar's sexual abuse of hundreds of young female athletes has led to numerous criminal prosecutions, terminations of employment of scores of executives of affiliated organizations who were complicit in the crimes, hundreds of civil lawsuits, state and federal remedial legislation and countless world-wide media reports. The fallout from the revelations of Nassar's conduct alone and those individuals who enabled or sanctioned or participated in his crimes continues to be an unfolding story. The entirety of these developments will be referred to in this Complaint as the "Nassar Scandal."

3.    Plaintiffs seek to hold the USOC and the USOC Officers and Directors named in this lawsuit accountable for participating in the wrongful conduct that caused injury to Plaintiffs based in part on Defendants' failure to timely implement mandatory reporting obligations, oversight and risk management of the sexual abuse of young athletes by adults who are under the

control and jurisdiction of the USOC, its Officers and Directors and its various NGBs.

4.      Over the past few decades, there has been a growing societal awareness of the pervasiveness of sexual abuse in youth-oriented organizations. Sexual abuse scandals have hit many organizations, such as the Catholic Church, the Boy Scouts, schools, hospitals and most notably youth sports.

5.      Since the 1980s, about 290 Olympic coaches and officials have been convicted of sexual misconduct against minors.  The USOC, its Officers and Directors and their NGBs have known for decades that sexual predators and pedophiles are attracted to the occupation of coaching young athletes yet failed to take effective action to detect and eliminate from Olympic sports those adults who posed an unreasonable risk of harm to the young athletes they were duty bound to protect.

6.      Since as early as 1999, USOC and its Officers and Directors were fully cognizant of the increasing threat of sexual misconduct in youth sports but failed to implement reporting and action requirements and obligations of USOC Officers and Directors, employees, agents and those in charge of the Gymnastics NGB which, if implemented, would have prevented the injuries to Plaintiffs.

7.      Given this history, the USOC, its Officers and Directors were empowered by Congress to prevent the crimes that are at the heart of the Nassar Scandal and others involving USOC/USAG Coaches.

8.      Given the painful history of adult authority figures in amateur athletics committing sexual violence against young athletes under their supervision and Defendants' utter disregard of this national disgrace, the Nassar Scandal, and other coach abuse, was predictable and hence preventable.

9.      After a major sexual abuse scandal hit the headlines in 2010, the USOC and its Officers and Directors recognized that it was their duty to implement safeguards to prevent sexual violence against young amateur athletes on a nationwide enterprise level and regardless of the athlete's affiliation with the USOC or one of its NGBs.

10.     The USOC wrongfully failed to implement its nationwide plan on an enterprise level, which would have protected all young athletes in the United States from sexual violence until 2017.

11.     The nationwide plan was finally implemented only after the Nassar Scandal erupted and caught the attention of the world. For many of the Plaintiffs, the implementation of real safeguards against sexual violence was too little, too late.

12.     Notwithstanding the USOC's self-imposed duty to protect young athletes regardless of USOC affiliation, the USOC failed to deliver on its promise. Because of this failure, USOC/USAG coaches had decades and Nassar had seven more years to carry out his reign of terror.

## II.    JURISDICTION AND VENUE

13.     This action is brought, in part, pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq*., as more fully set forth herein.

14.     This is also an action to redress the deprivation of Plaintiffs' constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

15.     Subject matter jurisdiction is founded upon 28 U.S.C. § 1331, which grants subject matter jurisdiction to district courts over all civil actions arising under the Constitution, laws, and treaties of the United States.

16.     Pursuant to 36 U.S.C.A. §220505(b)(9), the USOC may "sue and be sued" in any

federal district court.

17.    Subject matter jurisdiction is also founded upon 28 U.S.C. § 1343, which grants subject matter jurisdiction to district courts over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

18.    Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide all claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

19.    Plaintiffs' claims are cognizable under the United States Constitution, 42 U.S.C. § 1983, 20 U.S.C. §1681 *et seq*., and under Colorado law.

20.    The events giving rise to many of the causes of action in Plaintiffs' complaint primarily occurred in Colorado Springs, El Paso County, Colorado which sits in the United States District Court, District of Colorado.

21.    Venue is proper in the United States District Court, District of Colorado, pursuant to 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

22.    The amount in controversy exceeds the jurisdictional minimum of $75,000.00.

**III.    PARTIES**

23.    Plaintiffs reallege and incorporate by reference the allegations contained in the

preceding paragraphs.

24.     Plaintiffs are individuals, including parents and natural guardians individually and on behalf of their minor children, if applicable, who were sexually assaulted and abused by Nassar under the guise of medical treatment as a result of USOC's misconduct, failures and omissions.

25.     Plaintiff Jane RGC Doe 1 is an adult female resident of Michigan.

26.     Plaintiff Jane MLG Doe 2 is an adult female resident of Michigan.

27.     Plaintiff Jane LVB Doe 3 is an adult female resident of Michigan.

28.     Plaintiff Jane GK Doe 4 is an adult female resident of Michigan.

29.     Plaintiff Jane BC Doe 5 is an adult female resident of Michigan.

30.     Plaintiff Jane AC Doe 6 is a minor female resident of Michigan.  She brings this action through her father, John AA Doe, her next friend.

31.     Plaintiff Jane JA Doe 7 is an adult female resident of Ohio.

32.     Plaintiff Jane PH Doe 8 is a minor female resident of Michigan.  She brings this action through her mother, Jane PJ Doe, her next friend.

33.     Plaintiff Jane SM Doe 9 is an adult female resident of Iowa.

34.     Plaintiff Jane ME Doe 10 is an adult female resident of Michigan

35.     Plaintiff Jane KJ Doe 11 is an adult female resident of Indiana.

36.     Plaintiff Jane RK Doe 12 is an adult female resident of New York.

37.     Plaintiff Jane MPW Doe 13 is a resident of Michigan.

38.     Plaintiff Jane KN Doe 14 is a resident of Michigan.

39.     Plaintiff Jane KM Doe 15 is a resident of Florida.

40.     Plaintiff Jane AC Doe 16 is a minor and resident of Michigan.  She brings this action through her mother, L.C., her next friend.

41.    Plaintiff Jane M.N. Doe 17 is a resident of Texas.

42.    Plaintiff Jane B.D. Doe 18 is a resident of Oklahoma.

43.    Plaintiff Jane L.D. Doe 19 is a resident of Missouri.

44.    Plaintiff Jane K.K. Doe 20 is a resident of Michigan.

45.    Plaintiff Jane C.T. Doe 21 is a resident of Minnesota.

46.    Plaintiff Jane JJF Doe 22 is an adult female resident of Ohio.

47.    Plaintiff Jane RAC Doe 23 is an adult female and resident of Arizona.

48.    Plaintiff Jane RAD Doe 24 is an adult female and resident of North Carolina.

49.    Plaintiff Jane RAE Doe 25 is an adult female and resident of Michigan.

50.    Plaintiff Jane RAF Doe 26 is an adult female and resident of Florida.

51.    Plaintiff Jane RAG Doe 27 is an adult female and resident of Florida.

52.    Plaintiff Jane RAH Doe 28 is a minor female and resident of Michigan. She brings
this action through her father C.S. as her next friend.

53.    Plaintiff Jane ALC Doe 29 is an adult female and resident of Kentucky.

54.    Plaintiff Jane BH Doe 30 is an adult female and resident of Michigan.

55.    Plaintiff Jane DC Doe 31 is an adult female and resident of Florida.

56.    Plaintiff Jane KRA Doe 32 is an adult female and a resident of Michigan.

57.    Plaintiff Jane A.W. Doe 33 is an adult female resident of Michigan.

58.    Plaintiff Jane A.G. Doe 34 is an adult female resident of Michigan.

59.    Plaintiff Jane CP Doe 35 is an adult female resident of Michigan.

60.    Plaintiff Jane TB Doe 36 is an adult female resident of Michigan.

61.    Plaintiff Jane KB Doe 37 is an adult female resident of Michigan.

62.    Plaintiff Jane MH Doe 38 is an adult female resident of Michigan.

7

63.     Plaintiff Jane RS Doe 39 is an adult female resident of Michigan.

64.     Plaintiff Jane NLF-2 Doe 40 is an adult female and resident of Michigan.

65.     Plaintiff Jane NLF-4 Doe 41 is an adult female and resident of Michigan.

66.     Plaintiff Jane SAF Doe 42 is an adult female and resident of Michigan.

67.     Plaintiff Jane BRS Doe 43 is a minor female.  She brings this action through her next friend Jane BR Doe.

68.     Plaintiff Jane ANT Doe 44 is a minor female.  She brings this action through her next friend Jane NT Doe.

69.     Plaintiff Jane ILH 45 Doe is a minor female.  She brings this action through her next friend Jane LH Doe.

70.     Plaintiff Jane R.G. Doe 46 is an adult female and resident of Washington.

71.     Plaintiff Jane TMB Doe 47 is an adult female resident of California.

72.     Plaintiff Jane MLM Doe 48 is an adult female resident of North Carolina.

73.     Plaintiff Jane MML Doe 49 is an adult female and a resident of Michigan.

74.     Plaintiff Jane MLJ Doe 50 is an adult female and resident of Michigan.

75.     Plaintiffs' names have been withheld from this Complaint to protect Plaintiffs' identity as this action involves sexual abuse.

76.     Nassar is a Doctor of Osteopathic Medicine and resides in a federal prison located in Arizona.

77.     From 1986 to approximately 2016, Nassar had an employee or agency relationship with USOC holding various positions and capacities as a physician providing medical care and treatment to young athletes who were members of USA Gymnastics.

78.     At all relevant times alleged in this Complaint Nassar was acting within the scope of his employment or agency with USOC.

79.     The USOC is a not-for-profit corporation that was federally chartered pursuant to

the Amateur Sports Act of 1978. 36 U.S.C.A. § 220522 (1994). The USOC receives substantial sums of money from the federal government having its principal place of business in the State of Colorado and is headquartered in Colorado Springs, Colorado. Defendant USOC is authorized to conduct business and is conducting business throughout the United States, including in the State of Colorado. USOC's wrongful conduct primarily took place in the state of Colorado and elsewhere.

80.    The USOC is an organization to whom federal financial assistance is extended directly or through another recipient and which operates an educational program or activity receiving federal financial assistance  or benefits from such assistance and is subject to Title IX. 20 U.S.C. § 1681 *et. seq.*

81.    The Sports Act gives the USOC the power to control all the NGBs. USAG is one of 47 NGBs recognized by the USOC under the Act that sponsors or arranges amateur athletic competition.

82.    The following Defendants  (collectively as "USOC Directors" or "Directors") were Directors of USOC in some part of or all of 2015 and these Directors are sued in their individual capacities: Lawrence F. Probst, Chairman of the Board, Director Robert J. Bach, Director James M. Benson, Director Robert Bowlsby, Director Ursula M. Burns, Director Anita L. DeFrantz, Director Daniel L. Doctoroff, Director James L. Easton, Director John S. Hendricks, Director Nina M. Kemppel, Director Susanne D. Lyons. Director William C. Marlot, Director Mary R. McCagg, Director Steven M. Mesler, Director Dave W. Ogrean, Director Pisei Whitney Ping, Director Angela M. Ruggiero, Director Kevin M. White, Director Robert L. Wood.

83.    Upon information and belief, Defendant Lawrence F. Probst is a resident of the State of California.

84.     Upon information and belief, Defendant Robert J. Bach is a resident of the State of Washington.

85.     Upon information and belief, Defendant James M. Benson is a resident of the State of Arizona.

86.     Upon information and belief, Defendant Robert Bowlsby is a resident of the State of Texas.

87.     Upon information and belief, Defendant Ursula M. Burns is a resident of the State of New York.

88.     Upon information and belief, Defendant Anita L. DeFrantz is a resident of the State of California.

89.     Upon information and belief, Defendant Daniel L. Doctoroff is a resident of the State of New York.

90.     Upon information and belief, Defendant James L. Easton is a resident of the State of California.

91.     Upon information and belief, Defendant John S. Hendricks is a resident of the State of Florida.

92.     Upon information and belief, Defendant Nina M. Kemppel is a resident of the State of Alaska.

93.     Upon information and belief, Defendant Susan D. Lyons is a resident of the State of California.

94.     Upon information and belief, Defendant William C. Marlot is a resident of the State of Arizona.

95.     Upon information and belief, Defendant Mary R. McCagg is a resident of the State

of Massachusetts.

96.    Upon information and belief, Defendant Steven M. Mesler is a resident of the Province of Alberta, Canada and is currently a board member of the United States Olympic Committee, headquartered in Colorado Springs, Colorado.

97.    Upon information and belief, Defendant Dave W. Ogrean is a resident of the State of Colorado.

98.    Upon information and belief, Defendant Pisei Whitney Ping is a resident of the State of California.

99.    Upon information and belief, Defendant Angela M. Ruggiero is a resident of the Commonwealth of Massachusetts.

100.    Upon information and belief, Defendant Kevin M. White is a resident of the State of North Carolina.

101.    Upon information and belief, Defendant Robert L. Wood is a resident of the State of Florida.

102.    Officer Defendants (known collectively as either "USOC Officers" or "Officers") are Scott Blackmun, Chief Executive Officer, Alan Ashley, Chief Sports Performance and Larry Buendorf, Chief Security Officer.

103.    Scott Blackmun ("Blackmun") was the Chief Executive Officer for USOC from 2010 until 2018 when he resigned because of the Nassar Scandal. Blackmun was replaced by Sarah Hirshland ("Hirshland").

104.    Alan Ashley ("Ashley") was Chief of Sport Performance for USOC from approximately 2010 to December 2018.  As the Chief of Sport Performance Ashley was responsible for providing targeted resources and support to U.S. National Governing Bodies,

11

athletes and coaches, including USAG. Ashley was fired on December 10, 2018 by Hirshland, after she was made aware of the contents of the Ropes & Gray Independent Investigative Report issued that day.

105.     Larry Buendorf ("Buendorf"), Chief Security Officer from 1993 to April, 2018 was in charge of managing USOC security issues. Buendorf was replaced by Nicole Deal in July 2018.

106.     Upon information and belief, Defendant Scott Blackmun is a resident of the State of Colorado.

107.     Upon information and belief, Defendant Alan Ashley is a resident of the State of Colorado.

108.     Upon information and belief, Defendant Larry Buendorf is a resident of the State of Colorado.

109.     Blackmun, Ashley and Buendorf will be referred to collectively as the "USOC Officers."

110.     The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful conduct that injured Plaintiffs.

IV.     **STATEMENT OF FACTS**

A.     *The Federal Government Establishes the USOC to Govern US Amateur Sports*

111.     Congress originally chartered the United States Olympic Association in 1950 to organize and promote the United States' participation in international Olympic competition. This spun into the United States Olympic Committee (the "USOC") in 1964.

112.     In 1978, concerned with "the disorganization and the serious factional disputes

that seemed to plague amateur sports in the United States," Congress enacted the Ted Stevens Olympic and Amateur Sports Act ("the Sports Act"), P.L. 95–606 (now codified at 36 U.S.C. § 220501, *et seq.*), to codify the purpose and powers of the USOC, and to create NGBs for each Olympic Sport. The Sports Act controls the USOC and all NGBs, who merely operate as extensions or agents of the USOC.

113.    The stated purposes of the USOC include: to develop amateur athletic activity in the United States directly related to international amateur athletic competition; to exercise "exclusive jurisdiction" over  "all matters" pertaining to U.S. participation in the Olympic and Pan-American Games; to "obtain for the United States…the most competent amateur representation possible in each event" of the games; to provide "swift resolution of conflicts"; to "protect the opportunity of any amateur athlete, coach, trainer, manager, administrator, or official to participate in amateur athletic competition. Ted Stevens Amateur Sports Act, 36 U.S.C. §§220501, *et seq.*

114.    Defendant USOC had a mandatory obligation to ensure that before granting NGBs, including USAG, a sanction to host National or International events, that "proper medical supervision will be provided for athletes who will participate in the competition." 36 U.S.C. §§220525(b)(4)(E).

115.    Defendant USOC has the power to decertify USAG and any member gyms or teams in executing their duty to ensure "proper safety precautions have been taken to protect the personal welfare of the athletes," in granting NGBs a sanction to host national or international events." 36 U.S.C. §220525(b)(4)(F).

116.    The stated purposes of the USOC include: to develop amateur athletic activity in the United States directly related to international amateur athletic competition; to exercise

"exclusive jurisdiction" over "all matters" pertaining to U.S. participation in the Olympic and Pan-American Games; to "obtain for the United States…the most competent amateur representation possible in each event" of the games; to provide "swift resolution of conflicts"; to "protect the opportunity of any amateur athlete, coach, trainer, manager, administrator, or official to participate in amateur athletic competition"; and, recently, "to promote a safe environment in sports that is free from abuse, including emotional, physical, and sexual abuse, of any amateur athlete."

117.    The Sports Act gives the USOC the power to control all the NGBs.

118.    USAG is one of 47 NGBs recognized by the USOC under the Act that sponsors or arranges amateur athletic competition.

119.    The USOC accomplishes this by recognizing, for each of the various sports represented in the Olympic Games, one eligible amateur sports organization as an NGB for that sport, and the USOC provides substantial financial support to that NGB.

120.    Under the Sports Act, the USOC has a duty to protect the young athletes who seek to compete in Olympic sports in the United States. The USOC is responsible for the conduct of its NGBs and is required by statute to make sure Team USA's athletes are kept safe from sexual predators.

121.    The Sports Act allows the USOC to force NGBs to adopt policies and procedures to ensure the physical safety of athletes.

### B. USOC and Its Officers and Directors Control the USAG and They Have a Duty to Protect Young Athletes From Sexual Abuse by USOC Sanctioned Coaches, Trainers and Medical Providers

122.    Plaintiffs had a special and fiduciary relationship with Defendant USOC by virtue of being treated by Nassar (an agent of USOC) at USOC sanctioned events, and by virtue of

14

Plaintiffs being dues paying members of USAG, an entity under Defendant USOC's control.

123.    Some Plaintiffs were under the direct supervision and control of USOC or its agents at national and international events and were in fact *in loco parentis* with USOC while receiving "treatment" from Nassar.

124.    Oftentimes while training (including training at the Karolyi Ranch, a USOC/USAG sponsored program and sanctioned facility), and while competing at USOC/USAG sanctioned events Plaintiffs were away from their parents and under the complete care, custody, and control of USOC.

125.    Given the special and fiduciary relationship between Plaintiffs and Defendant USOC, USOC had an affirmative duty to disclose, warn and protect their members who sought Nassar's medical treatment from sexual abuse, assault, and molestation.

126.    Plaintiffs were minors or young adults who trusted USOC when Defendant USOC recommended Nassar to provide them with medical services and who also possessed sensitive and confidential information about their health. For example, in 1999, the USOC required all NGBs to purchase insurance to specifically cover the sexual assaults of any minor.

127.    If NGBs did not purchase sexual abuse insurance, their members would not be permitted to use the USOC training facilities in Chula Vista, California; Lake Placid, New York; Marquette, Michigan; or Colorado Springs, Colorado.

128.    In 2010, the USOC created a task force to address the issue of child sexual assault in all USOC controlled sports and to make recommendations.

129.    In September 2012, that task force presented its recommendations to the USOC Board of Directors.

130.    The USOC Board took no effective action on those recommendations for almost

seven years.

131.    In 2013, the USOC required each NGB to adopt an Athlete Safety Program by December 31, 2013.

132.    The USOC took no action to ensure that its NGBs, including USAG, actually adopted such a program and yet the USOC exerted its considerable influence, especially monetary, over NGBs based on success at the Olympic Games.

133.    In 2017, the USOC provided funding to each of the NGBs, but this funding ranged from a few hundred to a few million dollars.  And although the USOC evaluates many factors when distributing funds, the foremost consideration is the NGB's ability to generate medals, with the marketability of successful athletes serving as an important secondary consideration.

134.    Indeed, the USOC's focus on athletic and monetary success was so prevalent that one former USOC executive recalled that the words "money and medals" were probably uttered at every staff meeting, typically more than once, with the effect of marginalizing other topics such as athlete programming.  As a result, the USOC evaluated athletes much like a professional sports organization or any other company evaluating assets and examined the return brought by athletic success on its monetary investments.

135.    The USOC's decision to defer to the NGBs and exert minimal oversight is highlighted by (i) the USOC's willingness to credential an NGB's preferred medical provider, even if there were concerns about the provider, and (ii) the USOC's licensing of Olympic Training Sites, which carried the branding of the USOC, but otherwise operated independently.

136.    In or around 1996 Nassar was appointed by USOC as a member of the medical staff for the 1996 USAG National Team and the medical treatment provided to them at the 1996 Olympic games.  By virtue of this appointment, he provided medical treatment to the USAG

National Team at any and all events where the team participated. This appointment also permitted Nassar to provide medical treatment to other USAG gymnasts.

137.     Following the 2012 Olympics, the USOC medical team filled out evaluations of the various NGB medical staff that worked at the Games, and Nassar received low marks and a recommendation that the USOC not invite him to future Games based on his inability to work well in a multi-sport environment.

138.     The Chief Medical Officer of USOC reviewed the evaluation during his interview with the Independent Investigators and commented that this recommendation would have had no effect on whether Nassar attended a future Olympics.

139.     The existing practice was to defer to the USAG selection of Nassar, so that he would be guaranteed the right to attend the next Olympic Games.

140.     The USOC deferred to the NGBs and exerted only minimal oversight as highlighted by USOC's decision to credential an NGB's preferred medical provider, even if there were USOC concerns about that provider.

141.     Uncovered documents from the spring of 2015 indicate that Nassar was indeed scheduled to attend the Rio Games, despite the negative review from 2012.

142.     Likewise, USOC oversight of Olympic training facilities was limited to the issue of whether the training facility was properly managing the iconic USOC Five Ring brand.

143.     The USOC's designation of the Karolyi Ranch as an Olympic Training Site provides an example of the danger of lending the Olympic brand without corresponding oversight. With the express approval of USOC, Nassar regularly provided services or treatment to USAG members and those who trained at the Karolyi Ranch facility.

144.     The USOC did not perform any traditional due diligence such as conducting a site

inspection or otherwise investigating the conditions at the Ranch. Nor did it undertake any specific assessment to determine whether the remote location was appropriate for a physically dangerous sport like gymnastics.

145.    The USOC failed to create an auditing process by which it would become aware of sexual abuse allegations at USAG in particular and generally at the other NGBs.

146.    The USOC did not require the NGBs to track this information, resulting in the USOC not knowing that USAG had received a high number of complaints or anything about the nature of those complaints.

### B. USOC Has Operated for Decades in a Pervasive Pattern of USOC Sanctioned Coaches, Trainers and Medical Providers Sexually Assaulting Young Athletes

147.    The USOC, including its Officers and Directors were fully aware of the growing societal awareness of the pervasiveness of sexual abuse in youth-oriented organizations. Large-scale sexual abuse crises have hit many organizations, such as the Catholic Church, the Boy Scouts, schools and hospitals.

148.    Since 1982, more than 290 coaches and officials associated with the USOC sports organizations have been publicly accused of sexual misconduct, according to a *Washington Post* review of sport governing body banned lists, news clips, and court records in several states.

149.    Between 1996 and 1998, Kathy Scanlan ("Scanlan"), the president of USAG at the time, expressed concern to USOC's chair of the Board of Directors, Sandy Knapp, that sexual abuse by professional members was an ongoing issue within USAG.

150.    USAG was informed that their existing process of revoking memberships, investigating professional members of suspected or alleged sexual misconduct with minors, and banning professional members from the sport contradicted USOC policies.

151.    According to Scanlan, USOC discouraged USAG from establishing policies to

investigate and ban professional members alleged of sexual misconduct.

152.    Stories of abuse in youth sports have likewise grabbed headlines. For example, the cover page of the September 13, 1999 issue of *Sports Illustrated* stated "Who's Coaching Your Kid," with a center story concerning coaches who used their position to gain the trust and loyalty of children and then abuse them.

153.    As news and reports broke about systemic sexual misconduct occurring within NGBs governed by USOC, several NGBs, including USAG, requested that USOC take a leadership role in developing protective policies to be implemented by NGBs.  Despite the growing concern of sexual misconduct, USOC failed to adopt and update policies and procedures to address the issue.

154.    Despite this growing recognition of the threat of sexual abuse, the USOC and many NGBs failed to adopt updated policies and practices. The USOC had not taken any steps to position the organization to better understand the nature and seriousness of the issue, such as by collecting information from NGBs on the topic.

155.    When the 2010 sexual abuse scandal erupted at USA Swimming with an ABC television report detailing numerous relationships between coaches and young swimmers and revealing that 36 coaches had been banned over the previous decade, USA Swimming was caught in a media firestorm.

156.    As part of the USOC's efforts to deal with the USA Swimming scandal, Blackmun hired Malia Arrington to the newly-created position of Director of Ethics and SafeSport in April 2011.

157.    The USOC adopted a Safe Sport standard for the protection of amateur athletes on an enterprise level regardless of USOC or NGB affiliation.

19

158.    In June 2014, the USOC board approved the plan to create an independent SafeSport entity. The Center for SafeSport ("USCSS") eventually opened in March 2017, almost seven years after the USOC had formed its initial SafeSport working group.

159.    From the USCSS' launch in 2017 to April 13, 2018, the Center received written and oral reports, complaints, and allegations regarding sexual abuse from 35 of the 48 NGBs.

160.    The UCSS, since its inception, has averaged 85 complaints of sexual abuse per month.

161.    Although allegations of sexual abuse are generally kept confidential, in recent years, many NGBs have been at the center of public sexual abuse scandals.  These scandals have raised concerns about the USOC and NGBs' ability to adequately oversee the safety of athletes in organized sport.  Below is a non-exhaustive list of some of the recent controversies regarding sexual assault in the Olympic movement and the associated concerns with the USOC and NGB's ability to protect the well-being of athletes.

162.    During all the delays in opening the Center for SafeSport, the USOC did not enact basic protective measures, such as ensuring that the Olympic Training Sites established sufficient athlete safety policies or requiring NGBs to comply with best practices during travel involving adults and children.

163.    Between 2010 and 2017, the USOC failed to update its own processes for handling complaints.  The USOC continued its practice of declining to intervene at the level of individual complaints and, at the same time, remained largely in the dark with respect to NGB- level complaint processes.  Many NGBs lacked employees with expertise in handling complaints of abuse, and some athletes and other participants feared that making a complaint directly to the NGB for their sport would result in retaliation and permanent harm to their athletic careers.

164.    Outside of the formal complaint process, prior to the creation of the Center for SafeSport, complaints raised by athletes alleging misconduct were routinely rerouted back to the associated NGB.

165.    By directing complainants back to the relevant NGB, the USOC failed to appreciate the concern that the complainant could face retaliation from the NGB. Athletes and coaches expressed a fear of bringing complaints about a popular coach or administrator to a tight-knit NGB.

166.    USAG was aware of the danger of sexual abuse in its sport, took high-level steps to help protect gymnasts and promoted itself as a leader in athlete protection issues. However, USAG erected numerous procedural obstacles in the complaint resolution process that kept USAG from effectively addressing serious, credible allegations of child sexual abuse.

167.    USOC Defendants failed to implement and enforce policies and procedures that embraced a child-first approach when handling complaints of sexual misconduct.  This led to stark failures in implementing and enforcing effective measures to protect athletes from sexual misconduct and abuse.

### *USOC Officers Ignore Complaints about Nassar Resulting in the Continuation of Nassar's Access to Young Woman for Sexual Assaults Under the Guise of Medical Treatment.*

168.    In 2018, the USOC Directors engaged Ropes and Gray LLP to conduct an independent investigation ("Independent Investigation") that found that Nassar's ability to abuse athletes and patients for nearly three decades was a manifestation of the failures of the USOC to adopt and enforce appropriate child-protective policies and procedures to ensure a culture of safety.

169.    The Independent Investigation found that USOC failed to implement protective

measures to safeguard athletes and to supervise and monitor physicians and coaches. The USOC affirmatively failed to address the issues of sexual assault.

170.    Despite having been directly informed by NGBs of the threat of sexual misconduct in elite sports, USOC failed to take affirmative action for many years thereby permitting NGBs, including USAG, to continue to adhere to inadequate and harmful policies and practices.

171.    The USOC engaged in affirmative efforts to protect and preserve institutional interests of NGBs, including USAG, while taking no meaningful steps to protect athletes from the danger presented by Nassar. Rather, these organizations, each in their own way, maintained secrecy regarding the Nassar allegations and focused on controlling the flow of information about his alleged misconduct.

172.    USOC Defendants failed to implement and enforce protocols or policies regarding the medical treatment of athletes, such as whether, and how, trainers and medical staff, including Nassar, could treat patients in hotel rooms on the road which was a practice Nassar often employed.

173.    While employed by the USOC, Nassar practiced medicine at MSU's Sports Medicine Clinic, which is located on MSU's East Lansing, Michigan campus, at USOC and USAG sanctioned events worldwide, and at USAG gyms.

174.    The work performed by Nassar for USAG and Defendant USOC, was performed within the course and scope of Nassar's employment with MSU, and Defendant USOC was responsible for supervising Nassar, protecting the Plaintiffs from Nassar and warning the Plaintiffs' parents of the risked posed by Nassar to the Plaintiffs and other minor girls in Defendant USOC's care.

175.    As part of Nassar's employment and contractual duties with MSU, Nassar was

responsible for spending between 50 to 70% of his time engaged in "Outreach" and/or "Public Services."

176.    A part of Nassar's outreach included providing medical treatment to athletes affiliated with USOC as well as other organizations such as Holt High School.

177.    Nassar received financial benefits from his relationship with USOC including but not limited to increased patients at the MSU Sports Medicine clinic, and national and international recognition, fame, and prestige.

178.    USOC received financial benefits from its relationship with Nassar, and also MSU, including but not limited to increased membership in its organization, increased or additional membership fees, and national and international recognition, fame, and prestige.

179.    The USOC as an organization was effectively disabled from considering and taking appropriate action in response to the athlete complaints about Nassar due to the decision by two senior officers of the USOC to keep the matter to themselves.

180.    In July 2015, USAG CEO Steve Penny ("Penny") directly notified Blackmun, that National Team members had lodged sexual abuse allegations against USAG's National Team doctor, Larry Nassar.

181.    Penny also shared certain information with Ashley about the sexual abuse allegations.  Neither Mr. Blackmun nor Mr. Ashley shared the information received from Mr. Penny with others in the organization, and the USOC took no action between July 2015 and the date the *Indianapolis Star* published its account of Nassar's child sexual abuse in September 2016.

182.    After Penny advised Blackmun that USAG had received disturbing allegations about the gymnastics team doctor, Blackmun did not inform anyone else at the USOC of the

allegations, including any member of the USOC Board of Directors or any member of the USOC SafeSport team.

183.    Ashley likewise took no action in response to the information that Mr. Penny had shared with him.

184.    Blackmun did not initiate any internal review or other assessment to gather facts regarding Nassar, the athlete concerns, the scope of the alleged misconduct or Nassar's ability to gain access to athletes at USOC-owned and operated facilities, such as the U.S. Olympic Training Center in Colorado Springs, Colorado.

185.    Neither Blackmun nor Ashley alerted Nassar's employer, MSU or other youth-serving organizations with which Nassar was affiliated to the ongoing risk of harm.  When Buendorf reported to Blackmun that he had learned from Penny that athletes had raised concerns about a doctor's "technique" and that USAG had made a report to the FBI, Blackmun told Buendorf that he was already aware of the issue and neither asked any questions nor sought any guidance from his Chief of Security on appropriate child-protective measures.

186.    Blackmun and Ashley also each deleted from their respective email accounts the one email referencing Nassar by name that Penny had sent to the two of them in September 2015.

187.    Further, in early 2018 – long after the *Indianapolis Star* had publicly exposed Nassar – Susanne Lyons ("Lyons"), then a board member at the USOC sent an email to Blackmun conveying her understanding that, prior to publication of the *Indianapolis Star* article, Buendorf was the only person at the USOC who had known that Nassar was the alleged perpetrator.

188.    Blackmun failed to correct Lyons's clear misunderstanding.  He failed to explain to Lyons not only that he and Mr. Ashley had been the first to know of the allegations, but also that Buendorf, promptly after learning of the allegations from Penny, had dutifully reported those

allegations to Blackmun.

189.    USOC's inaction and concealment had consequences: dozens of girls and young women were abused during the year-long period between the summer of 2015 and September 2016

190.    During a press conference held prior to the opening of the 2018 Winter Olympic Games in PyeongChang, South Korea, USOC Chairman, Defendant Larry Probst apologized to sexual assault survivors of Nassar, saying "The Olympic system in the United States failed those athletes … and we are part of the Olympic System in the United States.

191.    Chairman Probst acknowledged the USOC should have reached out sooner to gymnasts who were survivors of sexual abuse.

192.    Probst also acknowledged the USOC should have attended sentencing hearings in Michigan from January to February 2018, stating "That was simply a mistake … We should have been there."

193.    At that same press conference, Mr. Probst also defended Scott Blackmun's handling of the complaints received by the USOC in 2015 regarding Nassar's sexual misconduct.

194.    Mr. Blackmun later resigned as CEO of the USOC.

195.    Later, in February 2018, Congress enacted the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act ("Safe Sport Act") to "prevent the sexual abuse of minors and amateur athletes by requiring the prompt reporting of sexual abuse to law enforcement authorities, and for other purposes."

196.    On March 28, 2017, in a hearing on the congressional bills preceding the enactment of the Safe Sport Act, Rick Adams, USOC Executive in charge of governing body development apologized to survivors of sexual abuse stating, "We do take responsibility, and we

apologize to any young athlete who has ever faced abuse."

197.    On January 22, 2019 Chairman of the Senate Committee on Finance Chuck Grassley challenged whether the USOC is in compliance with its stated purpose of providing "a safe environment in sports that is free from abuse, including emotional, physical and sexual abuse, of any amateur athlete" and ordered the USOC to provide written responses to 7 areas of inquiry by February 4, 2019, including but not limited to:

a.    Whether or not the USOC has taken any steps to restore its integrity considering former USOC CEO Scott Blackman and Chief of Sport Performance Alan Ashley failed to act even though they were informed of abuse in 2015, 14 months prior to Nassar's arrest;

b.    Whether the USOC actively investigating whether or not other individuals within USOC were made aware of the abuse allegations;

c.    Whether SafeSport, as a non-profit without a revenue stream, is adequately funded to investigate claims of abuse by amateur athletes at the NGB's;

d.    Whether the USOC's $3.1 million annual donation (less than 2% of the USOC's annual gross revenue) is sufficient for SafeSport to function and further whether the USOC intends to increase this funding;

e.    What, if anything, the USOC is doing to assist survivors of Nassar's abuse; and

f.    Whether the USOC has instituted training for its board members and other personnel, including NGB personnel, on how to identify warning signs of sexual abuse.

## V:  PLAINTIFFS' SPECIFIC ALLEGATIONS

198.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

199.    As an initial matter, all of Plaintiffs' claims are timely brought under Colorado law, specifically Colo. Rev. Stat. Ann. § 13-80-101, § 13-80-108, § 13-80-103.7, and § 13-22-101. Indeed, at the earliest, Plaintiffs did not and could not have discovered that their injuries were caused by the Defendants until Ropes & Gray, LLC's Report of the Independent Investigation was published on December 10, 2018.[1]

200.    Moreover, Defendants fraudulently concealed material facts so that they could not be discovered by the Plaintiffs.

### PLAINTIFF JANE RGC DOE 1

201.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane RGC Doe 1 by touching her genital area and digitally penetrating her vagina without Plaintiff's consent.

202.    In 2002 Plaintiff Jane RGC Doe 1 was a 17-year old high school gymnast who sustained multiple injuries during her gymnastics training, including injuries to her left hip, after which she sought treatment with Nassar.

203.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

204.    Plaintiff JANE RGC DOE 1 treated with Nassar at MSU SPORTS Clinic from February through March 2002 for treatment of her hip pain.

205.    During these treatment sessions, Dr. NASSAR would perform "pelvic adjustments and re-alignments".

206.    During each "pelvic adjustment or re-alignment", Dr. NASSAR would massage

---

[1] *See*
https://www.ropesgray.com/-/media/Files/USOC/ropes-gray-full-report.pdf.

Plaintiff's body and gradually move his hands to Plaintiff's genital area.

207.    During each "pelvic adjustment or re-alignment", Dr. NASSAR digitally penetrated and stroked Plaintiff's vagina without prior notice and under the fraudulent guise of performing "treatment." and even did so with her mother present in the exam room.

208.    The sexual assault consisting of digital penetration of Plaintiff's vagina by Dr. NASSAR always occurred under the guise of medical "treatment" and occurred on multiple occasions from February through March 2002, and would last for approximately 15 to 30 minutes depending on the visit.

209.    While Dr. NASSAR was inappropriately touching Plaintiff's vagina for his own sexual pleasure, he would fraudulently explain the sexual assault as "medical treatment" by explaining that the vaginal penetration and massage would release or relax her muscles which would then allow NASSAR to perform an adjustment to Plaintiffs hips.

210.    At the age of 17, Plaintiff Jane RGC Doe 1 was repeatedly sexually assaulted by Dr. NASSAR, at his MSU SPORTS medical office building in East Lansing, under the fraudulent guise of medical treatment.

211.    As a result of Nassar's conduct, Plaintiff Jane RGC Doe 1 suffered and continues to suffer emotional distress, anxiety and depression, among other issues.

212.    Plaintiff Jane RGC Doe 1's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**PLAINTIFF JANE MLG DOE 2**

213.    During Nassar's employment, agency, and representation with the Defendants,

Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane MLG Doe 2 by touching her genital area and digitally penetrating her vagina without Plaintiff's consent.

214. Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

215. Plaintiff JANE MLG DOE 2 (DOB 1981) treated with Nassar at his office at MSU Sports Medicine Clinic from 1997 through 2011 and Twistars Gymnasium from 1990 through 1997 where Dr. Nassar provided medical care and treatment.

216. Plaintiff was a member of USA Gymnastics.

217. Plaintiff sought treatment from Nassar after Twistar's owner John Geddert instructed Plaintiff that it was compulsory for her to treat with Nassar if she intended to remain affiliated with Twistars and USA Gymnastics.

218. Plaintiff presented to Nassar with injuries to her low back and wrist that she sustained through gymnastics.

219. Nassar, by characterizing his activities as "medical treatments", convinced Plaintiff that his sexual assaults of her were in fact appropriate and necessary to achieve a cure for her medical problems.

220. Plaintiff was sexually assaulted under the guise of "medical treatments" by Nassar during medical appointments in 1997 through 2011.

221. During the appointments at Nassar's office at MSU, if even only being treated for her wrist, Nassar digitally penetrated Plaintiff's vagina with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing "treatment."

222. During the "treatment", Nassar directed Plaintiff to alternate between turning onto her stomach, and back. It involved prolonged and intense manipulation of Plaintiff's vaginal area,

including digital penetration into her vagina with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing "treatment."

223.    As a result of the assault, Plaintiff has struggled with feelings of embarrassment, disgust, humiliation, and deep sadness.

224.    Plaintiff Jane MLG Doe 2's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## PLAINTIFF JANE LVB DOE 3

225.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane LVB Doe 3 by touching and digitally penetrating her vagina without her consent or the consent of her parents.

226.    In approximately 2010, Plaintiff Jane LVB Doe 3 was a promising 11- year-old gymnast.

227.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

228.    That in 2011 Plaintiff JANE LVB DOE 3 was listed as one of the top 100 gymnasts in the United States.

229.    Plaintiff sustained multiple injuries during her gymnastics training, including injuries to her hip, hamstring and low back, after which she sought treatment with Dr.  NASSAR.

230.    Plaintiff and her parents had no reason to suspect that Dr. NASSAR was anything other than a competent and ethical physician, as endorsed by MSU and USAG, and by virtue of his stature, status, and job titles with MSU and USAG.

231. Plaintiff regularly treated with Dr. NASSAR at said MSU SPORTS Clinic from the summer of 2010 through 2014, and at Twistar's gym during the gymnastics season, for treatment of her back pain, hip pain, and hamstring pain.

232. During these treatment sessions, Plaintiff JANE LVB DOE 3 was instructed to wear long and loose shorts so that Dr. NASSAR could more easily provide massage therapy treatment.

233. During these treatment sessions, Dr. NASSAR would often perform "pelvic adjustments and re-alignments" where he would massage Plaintiff's body and gradually move his hands to Plaintiff's genital area so that he could digitally penetrate and stroke Plaintiff's vagina without prior notice and without gloves or lubricant under the fraudulent guise of performing "treatment."

234. While Dr. NASSAR was inappropriately touching Plaintiff's vagina for his own sexual pleasure, he would fraudulently explain the sexual assault as "medical treatment" by explaining that the vaginal penetration and massage would release or relax her muscles which would then allow NASSAR to perform an adjustment to Plaintiffs hips and back.

235. From the ages of 12 through 14, Plaintiff was repeatedly sexually assaulted by Dr. NASSAR, which caused her to quit gymnastics and become suicidal.

236. As a result of Nassar's conduct, Plaintiff Jane LVB Doe 3 suffered and continues to suffer emotional distress and anxiety, among other issues.

237. Plaintiff Jane LVB Doe 3's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## PLAINTIFF JANE GK DOE 4

238.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane GK Doe 4 by touching and digitally penetrating her vagina, without her consent or the consent of her parents.

239.    Plaintiff Jane GK Doe 4 "treated" with Nassar from approximately 2009-2015 at the Michigan State Sports Medicine Clinic and Twistars.

240.    Plaintiff Jane GK Doe 4 was a member of USA Gymnastics from approximately 2009-2015.

241.    At all times during her treatment with Nassar, Plaintiff Jane GK Doe 4 was a minor.

242.    Although Defendants had prior notice of abuse allegations, it failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

243.    Beginning in approximately 2009, Nassar, while treating Plaintiff Jane GK Doe 4, would touch and digitally penetrate her vagina.

244.    Plaintiff Jane GK Doe 4 did not immediately realize the inappropriate nature of Nassar's supposed "treatment" because she was young, impressionable and sexually inexperienced.

245.    Plaintiff Jane GK Doe 4 began to realize the inappropriate and abusive nature of Nassar's conduct in approximately 2017 when others came forward publicly with stories of his abuse. Plaintiff began to remember her experiences with Nassar and when he pled guilty and admitted that he received sexual please from these treatments, she realized he sexually assaulted her under the guise of providing "treatment."

246.    Plaintiff Jane GK Doe 4 subconsciously carried the effects of Nassar's abuse throughout her entire life. As a result of Nassar's conduct, Plaintiff Jane GK Doe 4 suffered and continues to suffer emotional distress, anxiety and depression, among other issues.

247.    Plaintiff Jane GK Doe 4's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**PLAINTIFF JANE BC DOE 5**

248.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane BC Doe 5 by fondling her breasts, genitals and buttocks, and putting his hands underneath her leotard and shorts without her consent or the consent of her parents.

249.    Plaintiff Jane BC Doe 5 "treated" with Nassar between 2015 and 2016 at Twistars and the Michigan State Sports Medicine Clinic.

250.    Plaintiff Jane BC Doe 5 was a member of USA Gymnastics from July 2012 to the present.

251.    At all times during her treatment with Nassar, Plaintiff Jane BC Doe 5 was a minor.

252.    Although Defendants had prior notice of abuse allegations, it failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

253.    Beginning in approximately 2015, Nassar, while treating Plaintiff, would fondle plaintiff's breasts, genitals and buttocks, and put his hands underneath her leotard and shorts.

254.    Also during his treatment of Plaintiff, Nassar directly communicated with Plaintiff through text messaging, Facebook, and gave her gifts.

255.    Plaintiff Jane BC Doe 5 did not immediately realize the inappropriate nature of Nassar's supposed "treatment" because she was young, impressionable and sexually inexperienced.

256.    Plaintiff Jane BC Doe 5 began to realize the inappropriate and abusive nature of Nassar's conduct in approximately 2017 when others came forward publicly with stories of his abuse. Plaintiff began to remember her experiences with Nassar and realized he sexually assaulted her under the guise of providing "treatment."

257.    Plaintiff Jane BC Doe 5 subconsciously carried the effects of Nassar's abuse throughout her entire life. As a result of Nassar's conduct, Plaintiff Jane BC Doe 5 suffered and continues to suffer emotional distress, anxiety and depression, among other issues.

258.    Plaintiff Jane BC Doe 5's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

### PLAINTIFF JANE AC DOE 6

259.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane AC Doe 6 by fondling her buttocks, without her consent or the consent of her parents.

260.    Plaintiff Jane AC Doe 6 "treated" with Nassar in 2016 at the Michigan State Sports Medicine Clinic.

261.    Plaintiff Jane AC Doe 6 has been a member of USA Gymnastics since approximately 2007.

262.    At all times during her treatment with Nassar, Plaintiff Jane AC Doe 6 was a

minor.

263.    Although Defendants had prior notice of abuse allegations, it failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

264.    Beginning in approximately 2015, Nassar, while treating Plaintiff, would fondle plaintiff's buttocks.

265.    Plaintiff Jane AC Doe 6 did not immediately realize the inappropriate nature of Nassar's supposed "treatment" because she was young, impressionable and sexually inexperienced.

266.    Plaintiff Jane AC Doe 6 began to realize the inappropriate and abusive nature of Nassar's conduct in approximately 2017 when others came forward publicly with stories of his abuse. Plaintiff began to remember her experiences with Nassar and realized he sexually assaulted her under the guise of providing "treatment."

267.    Plaintiff Jane AC Doe 6 subconsciously carried the effects of Nassar's abuse throughout her entire life. As a result of Nassar's conduct, Plaintiff Jane AC Doe 6 suffered and continues to suffer emotional distress, anxiety and depression, among other issues.

268.    Plaintiff Jane AC Doe 6's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**PLAINTIFF JANE JA DOE 7**

269.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane JA Doe 7 by touching

and digitally penetrating her vagina, and fondling her breasts, genitals and buttocks without her consent or the consent of her parents.

270.    Plaintiff Jane JA Doe 7 "treated" with Nassar from approximately 2008-2009 at the Michigan State Sports Medicine Clinic, Twistars, and the Karolyi Ranch.

271.    Plaintiff Jane JA Doe 7 has been a member of USA Gymnastics since approximately 2008.

272.    At all times during her treatment with Nassar, Plaintiff Jane JA Doe 7 was a minor.

273.    Although Defendants had prior notice of abuse allegations, it failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

274.    Beginning in approximately 2008, Nassar, while treating Plaintiff, would touch and digitally penetrate her vagina, and fondle her breasts, genitals and buttocks without her consent or the consent of her parents.

275.    Plaintiff Jane JA Doe 7 did not immediately realize the inappropriate nature of Nassar's supposed "treatment" because she was young, impressionable and sexually inexperienced.

276.    Plaintiff Jane JA Doe 7 began to realize the inappropriate and abusive nature of Nassar's conduct in approximately 2017 when others came forward publicly with stories of his abuse. Plaintiff began to remember her experiences with Nassar and realized he sexually assaulted her under the guise of providing "treatment."

277.    Plaintiff Jane JA Doe 7 subconsciously carried the effects of Nassar's abuse throughout her entire life. As a result of Nassar's conduct, Plaintiff Jane JA Doe 7 suffered and continues to suffer emotional distress, anxiety and depression, among other issues.

278.    Plaintiff Jane JA Doe 7's injuries include, among others, shock, humiliation,

emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## PLAINTIFF JANE PH DOE 8

279.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane PH Doe 8 by touching and digitally penetrating her vagina, and fondling her breasts, genitals and buttocks without her consent or the consent of her parents.

280.    Plaintiff Jane PH Doe 8 "treated" with Nassar between approximately 2014-2016 at Twistars and the Michigan State Sports Medicine Clinic.

281.    Plaintiff Jane PH Doe 8 was a member of USA Gymnastics from approximately 2014-2016.

282.    At all times during her treatment with Nassar, Plaintiff Jane PH Doe 8 was a minor.

283.    Although Defendants had prior notice of abuse allegations, it failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

284.    Beginning in approximately 2014, Nassar, while treating Plaintiff, would touch and digitally penetrate her vagina, and fondling her breasts, genitals and buttocks.

285.    During this treatment, Nassar had an erection.

286.    Also during his treatment of Plaintiff, Nassar directly communicated with Plaintiff through text messaging, Instagram, and gave her gifts.

287.    Plaintiff Jane PH Doe 8 did not immediately realize the inappropriate nature of Nassar's supposed "treatment" because she was young, impressionable and sexually inexperienced.

288.     Plaintiff Jane PH Doe 8 began to realize the inappropriate and abusive nature of Nassar's conduct in approximately 2017 when others came forward publicly with stories of his abuse. Plaintiff began to remember her experiences with Nassar and realized he sexually assaulted her under the guise of providing "treatment."

289.     Plaintiff Jane PH Doe 8 subconsciously carried the effects of Nassar's abuse throughout her entire life. As a result of Nassar's conduct, Plaintiff Jane PH Doe 8 suffered and continues to suffer emotional distress, anxiety and depression, among other issues.

290.     Plaintiff Jane PH Doe 8's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**PLAINTIFF JANE SM DOE 9**

291.     During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane SM Doe 9 by fondling her breasts, genitals and buttocks without her consent or the consent of her parents.

292.     Plaintiff Jane SM Doe 9 "treated" with Nassar between approximately 2013 and 2015 at Twistars and the Michigan State Sports Medicine Clinic.

293.     Plaintiff Jane SM Doe 9 was a member of USA Gymnastics from approximately 2013-2015.

294.     At all times during her treatment with Nassar, Plaintiff Jane SM Doe 9 was a minor.

295.     Although Defendants had prior notice of abuse allegations, it failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

296.    Beginning in approximately 2013, Nassar, while treating Plaintiff, would fondle plaintiff's breasts, genitals and buttocks.

297.    Plaintiff Jane SM Doe 9 did not immediately realize the inappropriate nature of Nassar's supposed "treatment" because she was young, impressionable and sexually inexperienced.

298.    Plaintiff Jane SM Doe 9 began to realize the inappropriate and abusive nature of Nassar's conduct in approximately 2017 when others came forward publicly with stories of his abuse. Plaintiff began to remember her experiences with Nassar and realized he sexually assaulted her under the guise of providing "treatment."

299.    Plaintiff Jane SM Doe 9 subconsciously carried the effects of Nassar's abuse throughout her entire life. As a result of Nassar's conduct, Plaintiff Jane SM Doe 9 suffered and continues to suffer emotional distress, anxiety and depression, among other issues.

300.    Plaintiff Jane SM Doe 9's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## PLAINTIFF JANE ME DOE 10

301.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane ME Doe 10 by fondling her breasts, genitals and buttocks, without her consent or the consent of her parents.

302.    Plaintiff Jane ME Doe 10 "treated" with Nassar between 2015 and 2016 at the Michigan State Sports Medicine Clinic.

303.    Plaintiff Jane ME Doe 10 was a member of USA Gymnastics from approximately

2015-2016.

304.    At all times during her treatment with Nassar, Plaintiff Jane ME Doe 10 was a minor.

305.    Although Defendants had prior notice of abuse allegations, it failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

306.    Beginning in approximately 2015, Nassar, while treating Plaintiff, would fondle plaintiff's breasts, genitals and buttocks.

307.    During this treatment, Nassar had an erection.

308.    Plaintiff Jane ME Doe 10 did not immediately realize the inappropriate nature of Nassar's supposed "treatment" because she was young, impressionable and sexually inexperienced.

309.    Plaintiff Jane ME Doe 10 began to realize the inappropriate and abusive nature of Nassar's conduct in approximately 2017 when others came forward publicly with stories of his abuse. Plaintiff began to remember her experiences with Nassar and realized he sexually assaulted her under the guise of providing "treatment."

310.    Plaintiff Jane ME Doe 10 subconsciously carried the effects of Nassar's abuse throughout her entire life. As a result of Nassar's conduct, Plaintiff Jane ME Doe 10 suffered and continues to suffer emotional distress, anxiety and depression, among other issues.

311.    Plaintiff Jane ME Doe 10's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**PLAINTIFF JANE KJ DOE 11**

40

312.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane KJ Doe 11 by touching and digitally penetrating her vagina, without her consent or the consent of her parents.

313.    Plaintiff Jane KJ Doe 11 "treated" with Nassar in 2011 at the Michigan State Sports Medicine Clinic.

314.    Plaintiff Jane KJ Doe 11 was a member of USA Gymnastics from approximately 1997-2012.

315.    At all times during her treatment with Nassar, Plaintiff Jane KJ Doe 11 was a minor.

316.    Although Defendants had prior notice of abuse allegations, it failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

317.    Beginning in approximately 2011, Nassar, while treating Plaintiff, would touch and digitally penetrate her vagina.

318.    Plaintiff Jane KJ Doe 11 did not immediately realize the inappropriate nature of Nassar's supposed "treatment" because she was young, impressionable and sexually inexperienced.

319.    Plaintiff Jane KJ Doe 11 began to realize the inappropriate and abusive nature of Nassar's conduct in approximately 2017 when others came forward publicly with stories of his abuse. Plaintiff began to remember her experiences with Nassar and realized he sexually assaulted her under the guise of providing "treatment."

320.    Plaintiff Jane KJ Doe 11 subconsciously carried the effects of Nassar's abuse throughout her entire life. As a result of Nassar's conduct, Plaintiff Jane KJ Doe 11 suffered and continues to suffer emotional distress, anxiety and depression, among other issues.

321.     Plaintiff Jane KJ Doe 11's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**PLAINTIFF JANE RK DOE 12**

322.     During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane RK Doe 12 by touching and digitally penetrating her vagina, without her consent or the consent of her parents.

323.     Plaintiff Jane RK Doe 12 "treated" with Nassar in 2003-2004 in various places, including at the Karolyi Ranch.

324.     Plaintiff Jane RK Doe 12 was a member of USA Gymnastics in 2003.

325.     At all times during her treatment with Nassar, Plaintiff Jane RK Doe 12 was a minor.

326.     Although Defendants had prior notice of abuse allegations, it failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

327.     Beginning in approximately 2003, Nassar, while treating Plaintiff, would touch and digitally penetrate her vagina.

328.     Plaintiff Jane RK Doe 12 did not immediately realize the inappropriate nature of Nassar's supposed "treatment" because she was young, impressionable and sexually inexperienced.

329.     Plaintiff Jane RK Doe 12 began to realize the inappropriate and abusive nature of Nassar's conduct in approximately 2017 when others came forward publicly with stories of his abuse. Plaintiff began to remember her experiences with Nassar and realized he sexually assaulted

her under the guise of providing "treatment."

330.    Plaintiff Jane RK Doe 12 subconsciously carried the effects of Nassar's abuse throughout her entire life. As a result of Nassar's conduct, Plaintiff Jane RK Doe 12 suffered and continues to suffer emotional distress, anxiety and depression, among other issues.

331.    Plaintiff Jane RK Doe 12's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

### PLAINTIFF JANE MPW DOE 13

332.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane MPW Doe 13 as a minor including, but not limited to, touching and penetrating her vagina and anus without gloves and without her consent or the consent of her parents.

333.    In approximately 1998-2013, Plaintiff Jane MPW Doe 13 was a promising young gymnast.

334.    Defendants failed to warn Plaintiff Jane MPW Doe 13 of the known or foreseeable dangers regarding complaints related to Nassar.

335.    Plaintiff Jane MPW Doe 13 was a member of USAG.

336.    Plaintiff Jane MPW Doe 13 sustained multiple injuries during her gymnastics training after which she sought treatment with Dr. NASSAR.

337.    Plaintiff Jane MPW Doe 13 and her parents had no reason to suspect that Dr. NASSAR was anything other than a competent and ethical physician, as endorsed by MSU and USAG, and by virtue of his stature, status, and job titles with MSU and USAG.

338.    Plaintiff Jane MPW Doe 13 regularly treated with Dr. NASSAR at said MSU SPORTS Clinic and other locations from 1998 through 2013.

339.    During the 1998-2013 appointments with Nassar, Nassar digitally penetrated Plaintiff Jane MPW Doe 13's vagina with his finger(s) without prior notice and without gloves or lubricant under the guise of performing "treatment."

340.    During the "treatments," Nassar directed Plaintiff Jane MPW Doe 13 to alternate between turning onto her stomach and back. It involved prolonged and intense manipulation of Plaintiff's vaginal area, including digital penetration into her vagina with his finger(s) without prior notice and without gloves or lubricant under the guise of performing "treatment."

341.    Nassar did not explain his conduct disguised as "treatment" with the appearance of a medical procedure to Plaintiff Jane MPW Doe 13.

342.    Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff Jane MPW Doe 13's genitals.

343.    Plaintiff Jane MPW Doe 13 did not treat or intend to treat with Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

344.    Plaintiff Jane MPW Doe 13 believes the conduct by Nassar was sexual assault, abuse, and molestation and for Nassar's pleasure and self-gratification.

345.    While Dr. NASSAR was inappropriately touching Plaintiff Jane MPW Doe 13's vagina for his own sexual pleasure, he would fraudulently explain the sexual assault as "medical treatment" by explaining that the vaginal penetration and massage would release or relax her muscles which would then allow NASSAR to perform an adjustment.

346.    As a result of Defendants' conduct, Plaintiff Jane MPW Doe 13 suffered and continues to suffer emotional distress and anxiety, among other issues.

347.    Plaintiff Jane MPW Doe 13's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

### PLAINTIFF JANE KN DOE 14

348.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane KN Doe 14 as a minor including, but not limited to, touching and penetrating her vagina and anus without gloves and without her consent or the consent of her parents.

349.    In approximately 2004-2006, Plaintiff Jane KN Doe 14 was a promising young gymnast.

350.    Defendants failed to warn Plaintiff Jane KN Doe 14 of the known or foreseeable dangers regarding complaints related to Nassar.

351.    Plaintiff Jane KN Doe 14 was a member of USAG.

352.    Plaintiff Jane KN Doe 14 sustained multiple injuries during her gymnastics training after which she sought treatment with Dr. NASSAR.

353.    Plaintiff Jane KN Doe 14 and her parents had no reason to suspect that Dr. NASSAR was anything other than a competent and ethical physician, as endorsed by MSU and USAG, and by virtue of his stature, status, and job titles with MSU and USAG.

354.    Plaintiff Jane KN Doe 14 regularly treated with Dr. NASSAR at MSU SPORTS Clinic from 2004 through 2006.

355.    During the 2004-2006 appointments at Nassar's office at MSU, Nassar digitally penetrated Plaintiff Jane KN Doe 14's vagina with his finger(s) without prior notice and without

gloves or lubricant under the guise of performing "treatment."

356.    During the "treatments," Nassar directed Plaintiff Jane KN Doe 14 to alternate between turning onto her stomach and back. It involved prolonged and intense manipulation of Plaintiff's vaginal area, including digital penetration into her vagina with his finger(s) without prior notice and without gloves or lubricant under the guise of performing "treatment."

357.    Nassar did not explain his conduct disguised as "treatment" with the appearance of a medical procedure to Plaintiff Jane KN Doe 14.

358.    Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff Jane KN Doe 14's genitals.

359.    Plaintiff Jane KN Doe 14 did not treat or intend to treat with Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

360.    Plaintiff Jane KN Doe 14 believes the conduct by Nassar was sexual assault, abuse, and molestation and for Nassar's pleasure and self-gratification.

361.    While Dr. NASSAR was inappropriately touching Plaintiff's vagina for his own sexual pleasure, he would fraudulently explain the sexual assault as "medical treatment" by explaining that the vaginal penetration and massage would release or relax her muscles which would then allow NASSAR to perform an adjustment.

362.    As a result of Defendants' conduct, Plaintiff Jane KN Doe 14 suffered and continues to suffer emotional distress and anxiety, among other issues.

363.    Plaintiff Jane KN Doe 14's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## PLAINTIFF JANE KM DOE 15

364.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane KM Doe 15 by touching her vagina without her consent and having her disrobe to perform acupuncture believed to be for Nassar's sexual gratification.

365.    Defendants failed to warn Plaintiff Jane KM Doe 15 of the known or foreseeable dangers regarding complaints related to Nassar.

366.    Plaintiff Jane KM Doe 15 is a former gymnast.

367.    Plaintiff Jane KM Doe 15 sustained multiple injuries during her gymnastics training after which she sought treatment with Dr. NASSAR.

368.    Plaintiff Jane KM Doe 15 and her parents had no reason to suspect that Dr. NASSAR was anything other than a competent and ethical physician, as endorsed by MSU and USAG, and by virtue of his stature, status, and job titles with MSU and USAG.

369.    Plaintiff Jane KM Doe 15 treated with Dr. NASSAR at MSU SPORTS Clinic in November 2015.

370.    Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane KM Doe 15 by touching her vagina without her consent and having her disrobe to perform acupuncture believed to be for Nassar's sexual gratification under the guise of performing "treatment."

371.    Nassar did not explain his conduct disguised as "treatment" with the appearance of a medical procedure to Plaintiff Jane KM Doe 15.

372.    Nassar did not give prior notice or obtain consent to touch Plaintiff Jane KM Doe 15's genitals.

373.    Plaintiff Jane KM Doe 15 did not treat or intend to treat with Nassar for issues

related to obstetrics or gynecology (hereinafter "OB/GYN").

374.    Plaintiff Jane KM Doe 15 believes the conduct by Nassar was sexual assault, abuse, and molestation and for Nassar's pleasure and self-gratification.

375.    As a result of Defendants' conduct, Plaintiff Jane KM Doe 15 suffered and continues to suffer emotional distress and anxiety, among other issues.

376.    Plaintiff Jane KM Doe 15's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## PLAINTIFF JANE AC DOE 16

377.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane AC Doe 16 by touching and digitally penetrating her vagina without her consent or the consent of her parents.

378.    In 2015, Plaintiff Jane AC Doe 16 was a 14-year old high school freshman and competitive gymnast.

379.    Plaintiff Jane AC Doe 16 was a member of USA Gymnastics.

380.    Prior to her treatment with Nassar, Plaintiff Jane AC Doe 16 was a straight-A student and champion gymnast who was on the fast-track to collegiate-level gymnastics.

381.    In October 2015, on referral by her primary care physician, and at her coach's recommendation, Plaintiff Jane AC Doe 16 began treating with Nassar at the MSU Sports Medicine Clinic for back issues related to her gymnastics career.

382.    Although it had prior notice of abuse allegations against Nassar in July, 2015, Defendants failed to warn Jane AC Doe 16 of the known or foreseeable dangers regarding

complaints related to Nassar.

383.    As a result of Defendants' acts and omissions, from October through December 2015, Plaintiff Jane AC Doe 16 was sexually abused by Nassar multiple times under the guise of performing medical procedures.

384.    Nassar subjected Plaintiff Jane AC Doe 16 to multiple acts of sexual assault, molestation and harassment, including but not limited to performing full body massages, inappropriately touching Claimant's butt, and digitally penetrating Claimant.

385.    During the visits, Nassar routinely put his hand on and "up" Plaintiff's rectum, while purportedly adjusting or examining her back.

386.    Plaintiff Jane AC Doe 16 could feel Nassar's fingers inside her.

387.    Nassar also gave Plaintiff Jane AC Doe 16 full body massages.

388.    On one occurrence, while massaging Jane AC Doe 16, who was clothed only in her bra and underwear, Nassar pulled Jane AC Doe 16's underwear to the side and, ungloved, digitally penetrated her vagina with his finger. Plaintiff Jane AC Doe 16 had her first period during this procedure. She was embarrassed and concerned that Nassar got blood on his hands.

389.    Nassar targeted female patients, including Jane AC Doe 16, for sexual assault.

390.    Around the time she was receiving treatment, Plaintiff Jane AC Doe 16 talked to her teammates about Nassar's "treatments" and asked if the same thing was happening with them. They told her that it was and that it was a normal part of his treatment.

391.    Plaintiff Jane AC Doe 16 stopped treating with Nassar in or around December 2015.

392.    Soon thereafter, Nassar's sexual abuse received widespread media coverage.

393.    After learning that Nassar was, in fact, sexually abusing her during the medical

49

visits, Plaintiff began to withdraw.

394.    She focused intently on the news coverage of Nassar's case.

395.    Her grades dropped.

396.    Whereas Jane AC Doe 16 was a 4.0 student in middle school, by her sophomore year, her GPA fell to about a 2.5. Due to her failing GPA, Jane AC Doe 16 almost got kicked off of the gymnastics team.

397.    Jane AC Doe 16's injuries include, among others, shock, humiliation, emotional distress, and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, despair, fright, grief, and loss of enjoyment of life.

## PLAINTIFF JANE M.N. DOE 17

398.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

399.    From 1990-2001, Plaintiff had a gymnastics membership with the United States of America Gymnastics (USAG). From 2005-2014, Plaintiff had a coaching and judging membership with USAG.

400.    From 1993-1999, Plaintiff was a national team member and participated in the U.S. National Championships, the U.S. Classic, and the American Classic during these years. During these years she also attended training camp at the National Team Training Center in Texas at the Karolyi Ranch.

401.    From 1995-1999, Plaintiff also attended the USA National Gymnastics Camp at Michigan State University, in Colorado, and in Texas at the Karolyi Ranch. She also attended many USA National Gymnastics Competitions in various cities around the United States, including, but not limited to, New Orleans, Colorado, and Tennessee.

402.    In 1999, Plaintiff participated in the USAG National Team Competition. This event was sponsored by MSU's College of Osteopathic Medicine, MSU's Sports Medicine Clinic, and Twistars USA and only USAG Team Members were allowed to participate in this competition.

403.    In 1995 Plaintiff was a 12-year-old female gymnast with the USA National Gymnastics Team. That year Plaintiff suffered from an avulsion fracture in her back, an injury not uncommon in gymnastics, and sought treatment from a sports medicine physician. USAG told Plaintiff to treat with Nassar and did not give her an option to seek treatment from anyone else.

404.    Plaintiff saw Nassar for the first time, on or about, 1995 and continued to treat with him until 1999.

405.    Acting within the scope of his employment with United States of America Gymnastics (USAG), Nassar diagnosed Plaintiff's avulsion fracture and agreed to treat her. At no point did Nassar discuss with Plaintiff what his "treatments" would be.

406.    Plaintiff treated with Nassar at least approximately twenty-five to fifty times from 1995-1999 and he sexually assaulted her approximately fifteen to twenty times during those treatments.

407.    These treatments took place at USAG National Competitions, the Karolyi Ranch, the MSU Sports Medicine Clinic, and MSU Jenison Field House.

408.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane M.N. Doe by touching her genital area and digitally penetrating her vagina without Plaintiff's consent. Nassar would not wear gloves and used a "massage cream" as lubricant.

409.    Plaintiff was young, impressionable and sexually inexperienced. As a sexually inexperienced teenager Plaintiff had no reason and no way to know what was happening to her. As a young girl, Plaintiff implicitly trusted Nassar because he was her doctor. Plaintiff also discussed Nassar's behavior with other USAG National Team Members and they all came to the consensus that he was doing this to everyone.

410.    Nassar used his position of authority as a medical professional to abuse Plaintiff. Plaintiff had no reason to suspect Nassar was anything but a competent, respectable physician. Plaintiff could not have known Nassar was a serial pedophile who carefully selected and groomed his victims.

411.    Furthermore, Nassar was a renowned orthopedic sports medicine physician, well respected in the gymnastics community and the team doctor of the USAG Team. USAG promoted Nassar as USAG's team doctor and he received patients because of his status as team doctor.

412.    Plaintiff subconsciously carried the effects of Nassar's abuse throughout her entire life and only started to realize what had been done to her when other victims began to come forward.

413.    Plaintiff had to face the realization that Nassar had never performed medical treatments on her but instead was sexually assaulting her, forcing her to relive the trauma of sexual assault as she came to terms with everything she had experienced.

414.    Plaintiff has never been able to live a fully normal life because of the years of sexual abuse she suffered at the hands of Nassar. Subconsciously, Plaintiff has always been affected by the abuse and she has had to seek the help of mental health care providers because of it. Furthermore, Plaintiff has been placed on anxiety medication because of Nassar's conduct.

415.    Plaintiff must face daily pain and suffering as she goes through the process of

documenting all of the actions of Nassar.

416.    Plaintiff was deprived of a normal childhood and is now being deprived of a normal life, all because of Nassar's conduct.

### PLAINTIFF JANE B.D. DOE 18

417.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

418.    From approximately 2003-2016, Plaintiff was a member of USAG.

419.    From 2010-2016, Plaintiff was a National Team Member. Plaintiff participated in the U.S. National Championships and the American Classic competitions from 2009-2016. In addition to this, Plaintiff attended training camp at the National Team Training Center in Texas at the Karolyi Ranch in January 2010 and then once a month from September 2010 – April 2016. Plaintiff also attended many USAG National Team events in various locations, including, but not limited to, traveling to Mexico in 2010.

420.    In 2014, Plaintiff was an 18-year-old female with USAG National Team. That year she suffered from a hip injury, an injury not uncommon in gymnastics, while she was at the Karolyi Ranch and sought treatment from a sports medicine physician. Plaintiff was referred to Nassar by the USAG National Team Staff.

421.    Plaintiff saw Nassar for the first time, on or about, 2010 and continued to treat with him until 2015 when Nassar stopped working with USAG.

422.    Acting within the scope of his employment with United States of America Gymnastics (USAG), Nassar agreed to treat her hip injury. At no point did Nassar discuss with Plaintiff what his "treatments" would be.

423.    Plaintiff treated with Nassar at least approximately fifty times from 2010-2015

and he sexually assaulted her once during those treatments.

424.    The treatment where Plaintiff was sexually assaulted was at the Karolyi Ranch during the World Team Selection Camp for USAG.

425.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane B.D. Doe by touching her genital area and digitally penetrating her vagina without Plaintiff's consent.

426.    Plaintiff was young, impressionable and sexually inexperienced. As a sexually inexperienced teenager Plaintiff had no reason and no way to know what was happening to her. As a young girl, Plaintiff implicitly trusted Nassar because he was her doctor.

427.    Nassar used his position of authority as a medical professional to abuse Plaintiff. Plaintiff had no reason to suspect Nassar was anything but a competent, respectable physician. Plaintiff could not have known Nassar was a serial pedophile who carefully selected and groomed his victims.

428.    Furthermore, Nassar was a renowned orthopedic sports medicine physician, well respected in the gymnastics community and the team doctor of the USAG Team. USAG promoted Nassar as USAG's team doctor and he received patients because of his status as team doctor.

429.    Plaintiff subconsciously carried the effects of Nassar's abuse throughout her entire life. Plaintiff had treated with Nassar many times prior to this sexual assault and it was strange to her as he had never digitally penetrated her vagina prior to this. Plaintiff only started to realize that what Nassar had done to her was inappropriate when the news stories came out and other victims began to come forward.

430.    Plaintiff had to face the realization that Nassar did not perform a medical treatment on her but instead sexually assault her, forcing her to relive the trauma of sexual assault as she

came to terms with everything she had experienced.

431.    Plaintiff has never been able to live a fully normal life because of the years of sexual abuse she suffered at the hands of Nassar. Subconsciously, Plaintiff has always been affected by the abuse.

432.    Plaintiff must face daily pain and suffering as she goes through the process of documenting all of the actions of Nassar.

433.    Plaintiff was deprived of a normal childhood and is now being deprived of a normal life, all because of Nassar's conduct.

**PLAINTIFF JANE L.D. DOE 19**

434.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

435.    From approximately 2000-2012, Plaintiff was a member of USAG.

436.    In 2013, Plaintiff was a 15-year-old female. That year she was diagnosed with a spondi fracture with separation, an injury not uncommon in gymnastics, and sought treatment from a sports medicine physician. Nassar had been treating Plaintiff's sister, Plaintiff Jane B.D. Doe who had been referred to Nassar by USAG National Team Staff, and Plaintiff's mother contacted Nassar via his MSU email in July 2013 to discuss Plaintiff's diagnosis.

437.    Plaintiff saw Nassar for the first and only time, on or about, August 13, 2013. The treatment where Plaintiff was sexually assaulted occurred in the USAG Training Room at the USAG National Gymnastics Competition in Connecticut at the XL Center that year.

438.    Acting within the scope of his employment with United States of America Gymnastics (USAG), Nassar asked about Plaintiff at the August 2013 National Championships and agreed to treat her spondi fracture in the USAG Training Room. At no point did Nassar

discuss with Plaintiff what his "treatment" would be.

439.    Plaintiff's parents accompanied her to the UAG Training Room and Plaintiff's father stayed with Plaintiff while Nassar conducted his "treatment." Nassar would purposefully block Plaintiff's father's view and sexually assault Plaintiff for a short period of time before conducting feigned traditional "treatments."

440.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane L.D. Doe by touching her genital area and digitally penetrating her vagina without Plaintiff's consent.

441.    During the treatment Nassar massaged Plaintiff's labia and inserted his fingers into her vagina and anus. Nassar would move his fingers around and ask whether Plaintiff's back was still hurting. Nassar told Plaintiff he was performing "muscle release therapy" on her.

442.    Plaintiff was young, impressionable and sexually inexperienced. As a sexually inexperienced teenager Plaintiff had no reason and no way to know what was happening to her. As a young girl, Plaintiff implicitly trusted Nassar because he was her doctor.

443.    Nassar used his position of authority as a medical professional to abuse Plaintiff. Plaintiff had no reason to suspect Nassar was anything but a competent, respectable physician. Plaintiff could not have known Nassar was a serial pedophile who carefully selected and groomed his victims.

444.    Furthermore, Nassar was a renowned orthopedic sports medicine physician, well respected in the gymnastics community and the team doctor of the USAG Team. USAG promoted Nassar as USAG's team doctor and he received patients because of his status as team doctor.

445.    Plaintiff subconsciously carried the effects of Nassar's abuse throughout her entire life. Plaintiff only started to realize that what Nassar had done to her was inappropriate when the

news stories came out and other victims began to come forward.

446.   Plaintiff had to face the realization that Nassar did not perform a medical treatment on her but instead sexually assault her, forcing her to relive the trauma of sexual assault as she came to terms with everything she had experienced.

447.   Plaintiff has never been able to live a fully normal life because of the years of sexual abuse she suffered at the hands of Nassar. Subconsciously, Plaintiff has always been affected by the abuse.

448.   Plaintiff must face daily pain and suffering as she goes through the process of documenting all of the actions of Nassar.

449.   Plaintiff was deprived of a normal childhood and is now being deprived of a normal life, all because of Nassar's conduct.

## PLAINTIFF JANE K.K. DOE 20

450.   During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane K.K. Doe 20 by touching and digitally penetrating her vagina and anus while she was under the age of 18 without her consent or the consent of her parents.

451.   Plaintiff Jane K.K. Doe 20 was a member of U.S.A. Gymnastics (USAG) since she was in the first grade until she was a freshman in high school.

452.   Plaintiff Jane K.K. Doe 20 was affiliated with USAG through the Stars and Stripes Gymnastics Academy.

453.   Plaintiff Jane K.K. Doe 20 was a high-performing gymnast with a promising career ahead of her, having achieved gymnastics Level 8 by age 12, placing her achievements among Olympian gymnasts who achieved similar rankings around the same age.

454.    Plaintiff Jane K.K. Doe 20 began receiving treatment from Nassar in May 2012 when she was 11 years old after injuring her right foot tumbling.

455.    In or around February 2013, when Plaintiff Jane K.K. Doe 20 was 12 years old, Nassar began abusing her by digitally penetrating her vagina and anus.

456.    Nassar continued abusing Plaintiff Jane K.K. Doe every time she treated with him by digitally penetrating her vagina and anus without prior notice and without gloves or lubricant under the guise of performing "treatment" for three years, until 2015.

457.    Nassar, by characterizing his activities as "medical treatments." convinced Plaintiff that his sexual assaults of her were in fact appropriate and necessary to achieve a cure for her medical problems.

458.    Nassar abused Plaintiff Jane K.K. Doe 20 at MSU's Sports Medicine Clinic and at gymnastics meets sponsored by USAG held at, for instance, MSU's Jenison Field House and Gedderts Twistars USA.

459.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff Jane K.K. Doe 20 of the known or foreseeable dangers regarding complaints related to Nassar.

460.    Through her membership with the Stars and Stripes Academy, coaches affiliates with USAG and other gymnasts affiliates with USAG suggested and encouraged Plaintiff Jane K.K. Doe 20 to treat with Nassar when she began sustaining gymnastics-related injuries.

461.    Plaintiff Jane K.K. Doe 20 was physically injured by the repeated assaults and suffered pain, discomfort, physical illness, severe emotional distress, depression, anxiety, post-traumatic stress disorder, shock, humiliation, grief, embarrassment, loss of self-esteem, loss of familial relationships, loss of enjoyment of life, and will continue suffering pain of mind and body

due to the physical injuries sustained throughout the course of over three years of consistent, and repetitive abuse at the hands of a once-trusted medical professional.

## PLAINTIFF JANE C.T. DOE 21

462.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane C.T. Doe 21 by touching her genital area and digitally penetrating her vagina while ungloved without her consent or the consent of her parents.

463.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

464.    Plaintiff JANE C.T. DOE 21 (DOB 1992) treated with Nassar at his office at MSU Sports Medicine Clinic from March, 2009 through April, 2010 where Dr. Nassar provided medical care and treatment.

465.    Plaintiff was a member of USA Gymnastics.

466.    Plaintiff presented to Nassar with injuries to her knees that she sustained through gymnastics.

467.    Nassar, by characterizing his activities as "medical treatments", convinced Plaintiff that his sexual assaults of her were in fact appropriate and necessary to achieve a cure for her medical problems.

468.    Plaintiff was sexually assaulted under the guise of "medical treatments" by Nassar during medical appointments in March, 2009 through April 2010.

469.    During the appointments at Nassar's office at MSU, if even only being treated for her knees, Nassar digitally penetrated Plaintiff's vagina with his fingers without prior notice and without gloves or lubricant under the guise of performing "treatment."

470.    During the "treatment", Nassar directed Plaintiff to alternate between turning onto her stomach, and back. It involved prolonged and intense manipulation of Plaintiff's vaginal area, including digital penetration into her vagina with his fingers without prior notice and without gloves or lubricant under the guise of performing "treatment."

471.    As a result of the assault, Plaintiff has struggled with feelings of embarrassment, disgust, humiliation, and deep sadness.

472.    Plaintiff Jane C.T. Doe 21's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

### PLAINTIFF JANE JJF DOE 22

473.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane JJF Doe 22 by touching her genital area and digitally penetrating her anal area without Plaintiff's consent.

474.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

475.    In June 1999, Plaintiff Jane JJF Doe injured her back as a 14-year-old child while training to be an elite gymnast at a large Midwestern gymnastics organization, which was a USAG Member Club.

476.    Plaintiff Jane JJF Doe 22 was a dues-paying member of USAG.

477.    Plaintiff Jane JJF Doe 22's coach referred her to Nassar, touting him as well-known and highly reputable in treating gymnasts. Plaintiff Jane JJF Doe 22 tried to make an appointment for months without success, only confirming Nassar's reputation as a highly sought-

after sports doctor.

478.    Finally, Plaintiff Jane JJF Doe 22 was able to secure an appointment for a diagnostic visit with Nassar. She "treated" with him on one occasion in or around November 2000.

479.    At this appointment, Nassar directed Jane JJF Doe 22 to change from her clothing into thin shorts and lay on an examination table.

480.    The "treatment" lasted four agonizing hours during which Nassar directed Jane JJF Doe 22 to turn variously onto her stomach or back. It involved prolonged and intense manipulation of Jane JJF Doe 22's vaginal area over her shorts, including digital penetration into her anus. She recalls Nassar telling her "now i'm going to put my hand way up in your bottom area." Nassar also told her to let him know if it hurt, but even though Jane JJF Doe 22 told him "yes" and squirmed with pain and discomfort, he persisted. Although Jane JJF Doe 22's mother was present, Nassar was nonetheless able to accomplish his assault on Jane JJF Doe 22, who recalls the lights were extremely dim.

481.    Jane JJF Doe 22 had hoped that treatment with Nassar would alleviate her back problems, so that she could continue competing at a high level. Instead, her experience with Nassar discouraged her from seeking additional intervention for her back pain, and she eventually stopped competing in gymnastics altogether.

482.    Jane JJF Doe 22 learned of the criminal allegations against Nassar in late 2017 and realized that what she had struggled to rationalize as an invasive and thoroughly unpleasant doctor visit was not appropriate medical treatment, but illegal sexual assault. She eventually made a police report to Michigan State University police.

483.    Jane JJF Doe 22 has struggled with feelings of embarrassment, disgust,

humiliation, and deep sadness. She has nightmares about Nassar and the assault she endured. She has increased suspicion of doctors concerning her own medical care and that of her children. Intimacy in her marriage has suffered, as she has feelings of being withdrawn and not wanting to be touched.

484.    To this day, she experiences high anxiety, anger, and panic attacks that interfere with daily life.

### PLAINTIFF JANE RAC DOE 23

485.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane RAC Doe by touching her genital area and digitally penetrating her vagina without Plaintiff's consent.

486.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

487.    Plaintiff Jane RAC Doe (DOB 1993) treated with Nassar at his office at MSU Sports Medicine Clinic from 2007 through 2011 and Twistars Gymnasium from 2010 through 2011 where Dr. Nassar provided medical care and treatment.

488.    Plaintiff was a member of USA Gymnastics from 2002 through 2011.

489.    Plaintiff sought treatment from Nassar after Twistar's owner John Geddert who instructed Plaintiff that it was compulsory for her to treat with Nassar if she intended to remain affiliated with Twistars and USA Gymnastics.

490.    Plaintiff presented to Nassar with injuries to her back that she sustained through gymnastics.

491.    Nassar, by characterizing his activities as "medical treatments", convinced Plaintiff that his sexual assaults of her were in fact appropriate and necessary to achieve a cure

for her medical problems.

492.    Plaintiff was sexually assaulted under the guise of "medical treatments" by Nassar during medical appointments in 2010 through 2011 while a minor.

493.    During the appointments at Nassar's office at MSU, if even only being treated for her back, Nassar digitally penetrated Plaintiff's vagina with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing "treatment."

494.    During the "treatment", Nassar directed Plaintiff to alternate between turning onto her stomach, and back. It involved prolonged and intense manipulation of Plaintiff's vaginal area, including digital penetration into her vagina with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing "treatment."

495.    As a result of the assault, Plaintiff has struggled with feelings of embarrassment, disgust, humiliation, and deep sadness.

496.    Plaintiff Jane RAC Doe's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## PLAINTIFF JANE RAD DOE 24

497.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane RAD Doe by touching her genital area and digitally penetrating her vagina without Plaintiff's consent.

498.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

499.    Plaintiff Jane RAD Doe (DOB 1986) treated with Nassar at his office at MSU

Sports Medicine Clinic from 2001 through 2004 and Twistars Gymnasium from 2002 through 2004 where Dr. Nassar provided medical care and treatment.

500.    Plaintiff was a member of USA Gymnastics from 1995 through 2004.

501.    Plaintiff sought treatment from Nassar after Twistar's owner John Geddert instructed Plaintiff that it was compulsory for her to treat with Nassar if she intended to remain affiliated with Twistars and USA Gymnastics.

502.    Plaintiff presented to Nassar with injuries to her knee and hamstring that she sustained through gymnastics.

503.    Nassar, by characterizing his activities as "medical treatments", convinced Plaintiff that his sexual assaults of her were in fact appropriate and necessary to achieve a cure for her medical problems.

504.    Plaintiff was sexually assaulted under the guise of "medical treatments" by Nassar during medical appointments in 2001 through 2011.

505.    During the appointments at Nassar's office at MSU, if even only being treated for her knee and hamstring, Nassar digitally penetrated Plaintiff's vagina with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing "treatment."

506.    During the "treatment", Nassar directed Plaintiff to alternate between turning onto her stomach, and back. It involved prolonged and intense manipulation of Plaintiff's vaginal area, including digital penetration into her vagina with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing "treatment."

507.    As a result of the assault, Plaintiff has struggled with feelings of embarrassment, disgust, humiliation, and deep sadness.

508.    Plaintiff Jane RAD Doe's injuries include, among others, shock, humiliation,

emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

### PLAINTIFF JANE RAE DOE 25

509.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane RAE Doe by touching her genital area and digitally penetrating her vagina without Plaintiff's consent.

510.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

511.    Plaintiff Jane RAE Doe (DOB 1995) treated with Nassar at his office at MSU Sports Medicine Clinic from 2012 through 2013 where Dr. Nassar provided medical care and treatment.

512.    Plaintiff was a member of USA Gymnastics from 2007 through 2009.

513.    Plaintiff presented to Nassar with injuries to her knee and hamstring that she sustained through gymnastics.

514.    Nassar, by characterizing his activities as "medical treatments", convinced Plaintiff that his sexual assaults of her were in fact appropriate and necessary to achieve a cure for her medical problems.

515.    Plaintiff was sexually assaulted under the guise of "medical treatments" by Nassar during medical appointments in 2012 through 2013.

516.    During the appointments at Nassar's office at MSU, if even only being treated for her knee and hamstring, Nassar digitally penetrated Plaintiff's vagina with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing "treatment."

517.    During the "treatment", Nassar directed Plaintiff to alternate between turning onto her stomach, and back. It involved prolonged and intense manipulation of Plaintiff's vaginal area, including digital penetration into her vagina with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing "treatment."

518.    As a result of the assault, Plaintiff has struggled with feelings of embarrassment, disgust, humiliation, and deep sadness.

519.    Plaintiff Jane RAE Doe's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

### PLAINTIFF JANE RAF DOE 26

520.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane RAF Doe by touching her genital area and digitally penetrating her vagina without Plaintiff's consent and massaging her breasts.

521.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

522.    Plaintiff Jane RAF Doe (DOB 1992) treated with Nassar at the Karolyi Ranch and during numerous national and international events while a member of the US National Team and competing in World Championships.

523.    Plaintiff was a member of USA Gymnastics and the US National Team from 2007 through 2011.

524.    Plaintiff presented to Nassar with injuries to her knee and back that she sustained

through gymnastics.

525.    Nassar, by characterizing his activities as "medical treatments", convinced Plaintiff that his sexual assaults of her were in fact appropriate and necessary to achieve a cure for her medical problems.

526.    Plaintiff was sexually assaulted under the guise of "medical treatments" by Nassar during medical appointments from 2007 through 2011.

527.    During the appointments, Nassar digitally penetrated Plaintiff's vagina with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing "treatment."

528.    During the "treatment", Nassar directed Plaintiff to alternate between turning onto her stomach, and back. It involved prolonged and intense manipulation of Plaintiff's vaginal area, including digital penetration into her vagina with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing "treatment."

529.    As a result of the assault, Plaintiff has struggled with feelings of embarrassment, disgust, humiliation, and deep sadness.

530.    Plaintiff Jane RAF Doe's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## PLAINTIFF JANE RAG DOE 27

531.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane RAG Doe by touching her genital area and digitally penetrating her vagina without Plaintiff's consent and massaging

her breasts.

532.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

533.    Plaintiff Jane RAG Doe (DOB 1994) treated with Nassar at the Karolyi Ranch from 2007 to 2012 and at numerous national and international events while a member of the US National Team and competing in the World Championships.

534.    Plaintiff was a member of USA Gymnastics from 1999 through 2012 and a member of the US National Team from 2008 through 2012.

535.    Plaintiff presented to Nassar with injuries to her shoulder and back that she sustained through gymnastics.

536.    Nassar, by characterizing his activities as "medical treatments", convinced Plaintiff that his sexual assaults of her were in fact appropriate and necessary to achieve a cure for her medical problems.

537.    Plaintiff was sexually assaulted under the guise of "medical treatments" by Nassar during medical appointments from 2007 through 2012.

538.    During the appointments, Nassar digitally penetrated Plaintiff's vagina with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing "treatment."

539.    During the "treatment", Nassar directed Plaintiff to alternate between turning onto her stomach, and back. It involved prolonged and intense manipulation of Plaintiff's breasts and vaginal area, including digital penetration into her vagina with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing "treatment."

540.    As a result of the assault, Plaintiff has struggled with feelings of embarrassment,

disgust, humiliation, and deep sadness.

541.    Plaintiff Jane RAG Doe's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**PLAINTIFF JANE RAH DOE 28**

542.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane RAH Doe by touching her genital area and digitally penetrating her vagina without Plaintiff's consent.

543.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

544.    Plaintiff Jane RAH Doe (DOB 2002) treated with Nassar at his office at MSU Sports Medicine Clinic from 2013 through 2016 and Twistars Gymnasium from 2013 through 2016 where Dr. Nassar provided medical care and treatment.

545.    Plaintiff was a member of USA Gymnastics starting in 2010.

546.    Plaintiff presented to Nassar with injuries to her knee and hamstring that she sustained through gymnastics.

547.    Nassar, by characterizing his activities as "medical treatments", convinced Plaintiff that his sexual assaults of her were in fact appropriate and necessary to achieve a cure for her medical problems.

548.    Plaintiff was sexually assaulted under the guise of "medical treatments" by Nassar during medical appointments in 2013 through 2016.

549.    During the appointments at Nassar's office at MSU, if even only being treated for

her knee and back, Nassar digitally penetrated Plaintiff's vagina with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing "treatment."

550.    During the "treatment", Nassar directed Plaintiff to alternate between turning onto her stomach, and back. It involved prolonged and intense manipulation of Plaintiff's vaginal area, including digital penetration into her vagina with his finger and thumb without prior notice and without gloves or lubricant under the guise of performing "treatment."

551.    As a result of the assault, Plaintiff has struggled with feelings of embarrassment, disgust, humiliation, suicidal thoughts, cutting, regression in school and severe depression.

552.    Plaintiff Jane RAH Doe's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## PLAINTIFF JANE ALC DOE 29

553.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane ALC Doe by touching and digitally penetrating her vagina and anus without her consent or the consent of her parents.

554.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

555.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

556.    Plaintiff Jane ALC Doe treated with Nassar at MSU's Sports Medicine Clinic, his office at Defendant Twistars and at his home between from 1999 through 2005.

557.    In 1999, Plaintiff Jane Doe was a minor, 12 years old.

558.    From 1999 to 2005, Plaintiff Jane ALC Doe presented to Nassar with various injuries to her back, neck, head, and ankle, etc., suffered through gymnastics.

559.    During weekly appointments at his office at Defendant Twistars and regular appointments at his office at MSU Sports Medicine Clinic from 1999 to 2005, Nassar digitally penetrated Plaintiff Jane ALC Doe's vagina and anus with his finger without prior notice and without gloves or lubricant under the guise of performing "treatment" and sexually assaulted, abused, and molested her by engaging in nonconsensual sexual touching, assault and harassment.

560.    These instances of abuse under the guise of "treatment" occurred at least 200 times (conservatively.)

561.    Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane ALC Doe.

562.    Nassar did not give prior notice or obtain consent for digital vaginal or anal penetration.

563.    Plaintiff Jane ALC Doe did not treat or intend to treat with Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

564.    Plaintiff Jane ALC Doe believes the conduct by Nassar was sexual assault, abuse, and molestation and for Nassar's pleasure and self-gratification.

565.    After watching the victim impact statements during Nassar's criminal sentencing in the Ingham County Circuit Court, Plaintiff Jane ALC Doe realized, for the first time, the sexual abuse she experienced by Nassar.

566.    Plaintiff Jane ALC Doe advised her family of the fact that she had been the victim of sexual assault, sexual assault, abuse, molestation and nonconsensual touching and harassment

by Nassar.

567.    As a result of Nassar's conduct, Plaintiff Jane ALC Doe suffered and continues to suffer emotional distress, anxiety and depression, among other issues.  Plaintiff Jane ALC Doe's injuries include, among others, shock, humiliation; emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## PLAINTIFF JANE BH DOE 30

568.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane BH Doe by touching and digitally penetrating her vagina and anus without her consent or the consent of her parents.

569.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

570.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

571.    Plaintiff Jane BH Doe began training at Twistars Gym in or around 2005.

572.    Plaintiff Jane BH Doe treated with Nassar at MSU's Sports Medicine Clinic, his office at Defendant Twistars, Nassar's home, the MSU fieldhouse and at various USAG sanctioned gymnastics meets between 2014 through 2016.

573.    In 2014, Plaintiff Jane Doe was a minor, 13 years old.

574.    From 2014-2016, Plaintiff Jane BH Doe presented to Nassar with various injuries to her foot, hamstring, back, toe, etc. suffered through gymnastics.

575.    During regular visits at his office at MSU Sports Clinic, weekly appointments at

his office at Defendant Twistars, weekly appointments at Nassar's home and at USAG sanctioned meets from 2014-2016, Nassar digitally penetrated Plaintiff Jane BH Doe's vagina and anus with his finger without prior notice and without gloves or lubricant under the guise of performing "treatment" and sexually assaulted, abused, and molested her by engaging in non-consensual sexual touching, assault and harassment.

576.    These instances of abuse under the guise of "treatment" occurred at least 200 times conservatively.

577.    Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane BH Doe.

578.    Nassar did not give prior notice or obtain consent for digital vaginal or anal penetration.

579.    Plaintiff Jane BH Doe did not treat or intend to treat with Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

580.    Plaintiff Jane BH Doe believes the conduct by Nassar was sexual assault, abuse, and molestation and for Nassar's pleasure and self-gratification.

581.    Plaintiff Jane BH Doe advised her parents of the fact that she been the victim of sexual assault, sexual assault, abuse, molestation and nonconsensual touching and harassment by Nassar,

582.    Plaintiff Jane BH Doe gave a victim impact statement at Nassar's criminal sentencing hearing in Ingham County in January 2018.

583.    As a result of Nassar's conduct, Plaintiff Jane BH Doe suffered and continues to suffer emotional distress, anxiety and depression, among other issues.  Plaintiff Jane BH Doe's injuries include, among others, shock, humiliation; emotional distress and related physical

manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## PLAINTIFF JANE DC DOE 31

584**.**    During Nassar's employment, agency, and representation with the Defendants, Nassar   sexually assaulted, battered, abused, and molested Plaintiff Jane DC Doe by touching and digitally penetrating her vagina and anus without her consent or the consent of her parents.

585.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

586.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

587.    Plaintiff Jane DC Doe was a gymnast on the Holt High School gymnastics team and sought treatment from Dr. Nassar for various injuries over a period of 2 years between her sophomore and senior year of high school.

588.    It was during a "treatment" for a knee injury in 2014 that Ms. Corbin, then a minor, was sexually assaulted by Dr. Nassar at the Michigan State University Sports Medicine Clinic.

589.    Plaintiff Jane DC Doe was subjected to digital vaginal penetration without proper notice, without gloves, or lubricant, and without other any other medical professional present, under the guise of providing medical care and treatment, at Dr. Nassar's office at Michigan State University's Sports Medicine Clinic.

590.    Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff Jane DC Doe.

591.    Nassar did not give prior notice or obtain consent for digital penetration or

touching of Plaintiff Jane DC Doe's vagina.

592.    Plaintiff Jane DC Doe did not treat or intend to treat with Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

593.    Plaintiff Jane DC Doe believes the conduct by Nassar was a sexual assault, abuse, and molestation and for Nassar's pleasure and self-gratification.

594.    After viewing a media report regarding Nassar's criminal sentencing in the Ingham County Circuit Court, Plaintiff Jane DC Doe realized, for the first time, that she had been sexually abused by Nassar while under his care and treatment.

595.    Plaintiff Jane DC Doe advised her parents of the fact she had been the victim of sexual assault, abuse, molestation and nonconsensual sexual touching and harassment by Nassar.

596.    As a result of Nassar's conduct, Plaintiff Jane DC Doe suffered and continues to suffer emotional distress, anxiety and depression, among other issues.  Plaintiff Jane DC Doe's injuries include, among others, shock, humiliation; emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

### PLAINTIFF JANE KRA DOE 32

597.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane KRA Doe 32 by touching and digitally penetrating her vagina and anus and touching her breasts without her consent or the consent of her parents.

598.    Plaintiff  was a member of USA Gymnastics between approximately December of 1993 and May of 2001.

599.     Plaintiff saw Nassar at his office at MSU Sports Medicine Clinic on at least 9 occasions between February of 2000 and November of 2000, when Plaintiff was only 13 years old at the direction of her USA Gymnastics Coach.

600.     Plaintiff saw Nassar at his office at MSU Sports Medicine Clinic on at least 4 occasions between October 2009 and March 2010 when she was only 22 years of age.

601.     Although Defendants had prior notice of abuse allegations before Plaintiff saw Nassar for the first time, they failed to warn Plaintiff of the known and foreseeable dangers regarding complaints related to Nassar.

602.     Plaintiff presented to Nassar with complaints of back injury and back pain sustained through gymnastics.

603.     During appointments at MSU when Plaintiff was only 13 years old, Nassar digitally penetrated Plaintiff's vagina and anus with his finger or thumb without prior notice and without gloves or lubricant under the guise of "treatment."

604.     During the appointments at MSU when Plaintiff was only 13 years old, Nassar directed Plaintiff to wear a leotard and to arch while manipulating pelvic structures. Nassar also touched and massaged Plaintiff's breasts claiming it was for "rib alignment," and performed what he characterized as "deep tissue massage" on Plaintiff's buttocks.

605.     During appointments when Plaintiff was 22 years of age, Nassar would massage Plaintiff's body and gradually move his hands to Plaintiff's genital area and continued the penetration and sexual and unconsented touching and began making inappropriate sexual comments.

606.     Plaintiff and her parents had no reason to suspect that Nassar was anything other than a competent and ethical physician and every reason to believe that Nassar was a gifted

76

healer after the endorsements of given Nassar by MSU, the USAG and the USOC and by virtue of his stature within the gymnastics community and his positions with MSU and USAG.

607.    By characterizing his activities as "medical treatments" in the context of the endorsements and accolades showered on him by MSU and the USAG, Nassar was able to convince Plaintiff , her parents, and later Plaintiff's husband that, what were actually sexual assaults, were necessary and appropriate to achieve a cure for Plaintiff's medical problems.

608.    Plaintiff was sexually abstinent until marriage. As a result of the abuse Plaintiff suffered, sex and sexual touching after marriage has generated intense anxiety and panic and causes Plaintiff to suffer shame, confusion, guilt, and depression and which has strained her marriage and which is so severe as to contribute to Plaintiff's decision to withdraw from medical school, and has required Plaintiff to seek medical and mental health treatment which is ongoing.

609.    Plaintiff has been forced to recognize that she has been sexually assaulted by someone who was promoted by trusted authorities in the world of gymnastics, forcing her to deal with the trauma of sexual abuse and to repeatedly relive this trauma.

610.    Plaintiff KRA DOE 32's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, loss of enjoyment of life and she has sustained and continued to sustain loss of earnings and earning capacity and liability for medical treatment and care.

**PLAINTIFF JANE A.W. DOE 33**

611.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane A.W. Doe 33 by touching her genital area and digitally penetrating her vagina without Plaintiff's consent.

77

612.    In 2001 Plaintiff Jane A.W. Doe 33 was a sixteen year old high school gymnast who sustained injuries during a gymnastics meet that made her unable to walk, after which she sought treatment with Nassar.

613.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

614.    Plaintiff Jane A.W. Doe 33 treated with Nassar at MSU SPORTS Clinic in 2001 and 2002 for treatment of her back pain.

615.    During these treatment sessions, Dr. NASSAR would perform "pelvic adjustments and re-alignments".

616.    During each "pelvic adjustment or re-alignment", Dr.  NASSAR would massage Plaintiff's body and gradually move his hands to Plaintiff's genital area.

617.    During each "pelvic adjustment or re-alignment", Dr. NASSAR digitally penetrated and stroked Plaintiff's vagina without prior notice and under the fraudulent guise of performing "treatment."

618.    The sexual assault consisting of digital penetration of Plaintiff's vagina by Dr. NASSAR always occurred under the guise of medical "treatment" and occurred on multiple occasions in 2001 and 2002, and would last for approximately 30 to 60 minutes depending on the visit.

619.    While Dr. NASSAR was inappropriately touching Plaintiff's vagina for his own sexual pleasure, he would fraudulently explain the sexual assault as "medical treatment" by explaining that the vaginal penetration and massage would release or relax her muscles which would then allow NASSAR to perform an adjustment to Plaintiff's back.

620.    At the ages of 16 and 17, Plaintiff Jane A.W. Doe was repeatedly sexually

assaulted by Dr. NASSAR, at his MSU SPORTS medical office building in East Lansing, under the fraudulent guise of medical treatment.

621.     As a result of Nassar's conduct, Plaintiff Jane A.W. Doe suffered and continues to suffer emotional distress, anxiety and depression, among other issues.

622.     Plaintiff Jane A.W. Doe's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

### PLAINTIFF JANE A.G. DOE 34

623.     During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane A.G. Doe 34 by touching her genital area and digitally penetrating her vagina without Plaintiff's consent.

624.     In 2001 Plaintiff Jane A.G. Doe was a fifteen year old high school gymnast who sustained multiple injuries in a car wreck and subsequently during her gymnastics training, including injuries to her back, after which she sought treatment with Nassar.

625.     Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

626.     Plaintiff Jane A.G. Doe treated with Nassar at MSU SPORTS Clinic and Holt High School in 2001 and 2002 for treatment of her back pain.

627.     During these treatment sessions, Dr. NASSAR would perform "pelvic adjustments and re-alignments".

628.     During each "pelvic adjustment or re-alignment", Dr. NASSAR would massage Plaintiff's body and gradually move his hands to Plaintiff's genital area.

629.     During each "pelvic adjustment or re-alignment", Dr. NASSAR digitally penetrated and stroked Plaintiff's vagina and anus without prior notice and under the fraudulent guise of performing "treatment."

630.     The sexual assault consisting of digital penetration of Plaintiff's vagina and/or anus by Dr. NASSAR always occurred under the guise of medical "treatment" and occurred on multiple occasions from February 2001 through July 2002, and would last for approximately 15 to 60 minutes depending on the visit.

631.     While Dr. NASSAR was inappropriately touching Plaintiff's for his own sexual pleasure, he would fraudulently explain the sexual assault as "medical treatment" by explaining that the vaginal penetration and massage would release or relax her muscles which would then allow NASSAR to perform an adjustment to Plaintiff's back.

632.     At the ages of 15 and 16, Plaintiff Jane A.G. Doe was repeatedly sexually assaulted by Dr. NASSAR, at his MSU SPORTS medical office building in East Lansing, under the fraudulent guise of medical treatment.

633.     As a result of Nassar's conduct, Plaintiff Jane A.G. Doe suffered and continues to suffer emotional distress, anxiety and depression, among other issues.

634.     Plaintiff Jane A.G. Doe's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

### PLAINTIFF JANE CP DOE 35

635.     Plaintiff Jane CP Doe incorporates by reference the allegations contained in the previous paragraphs of the Complaint.

636.    Plaintiff is at all times material hereto a resident of the state of Michigan.

637.    At all times pertinent hereto, Plaintiff Jane CP Doe was treated and/or assaulted and abused by Nassar when she was a minor.

638.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane CP Doe by touching and digitally penetrating her vagina and anus while she was under the age of 18 without her consent or the consent of her parents.

639.    Jane CP Doe was a member of  USA Gymnastics from 2010-2016.

640.    Plaintiff Jane CP Doe competed in national competitions.

641.    Plaintiff Jane CP Doe was a member at the Twistars gym from 2010-2016.

642.    Plaintiff Jane CP Doe treated with Nassar between 2010 and 2016 at Twistars, the Michigan State University Sports Medicine Clinic, her parents private residence and the private residence of Nassar.

643.    Beginning in approximately 2010, Nassar, while treating Plaintiff Jane CP Doe, would fondle Plaintiff's breasts, genitals and buttocks, and put his hands underneath her leotard and/or shorts.

644.    Between approximately 2010 and 2016, Nassar committed this fondling of Plaintiff without gloves, and under Plaintiff's leotard and/or shorts and/or clothing without providing notice to her or her parents, or obtaining consent from either Jane CP Doe or her parents.

645.    That Nassar's fondling of Jane CP Doe included, but was not limited to, anal and vaginal penetration with an ungloved hand.

646.    That due to abuse inflicted by Nassar as outlined herein, Plaintiff Jane CP Doe

made a decision to quit gymnastics, even though she was a Level 10 gymnast, and so advised the individuals at Twistars including Geddert, Nassar and Jane CP Doe's mother.

647.    That Plaintiff Jane CP Doe was a Level 10 gymnast and, on information and belief, had been sought out and had been scouted by various colleges including, but not limited to, Universities of Kentucky, North Carolina and Arizona.

648.    That Plaintiff Jane CP Doe visited the Universities of Kentucky, North Carolina and Arizona with her parent or parents with anticipation of arranging a full-ride scholarship with said institutions in the future.

649.    That at some point in time, Plaintiff Jane CP Doe arrived at a conscious appreciation of the fact that she had been abused and, as a direct result thereof, she became mentally and emotionally unstable which caused her to be admitted to a hospital for many days after having made a suicide attempt and/or gesture, for mental health care and treatment.

650.    That Plaintiff Jane CP Doe currently believes that the conduct of Nassar was sexual assault, abuse, molestation and harassment performed for Nassar's sexual pleasure and gratification alone.

651.    As a result of Nassar's conduct, Plaintiff Jane CP Doe suffered and continues to suffer emotional distress and anxiety, among other issues.

652.    Plaintiff Jane CP Doe injuries include, among others, anxiety and depression, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## PLAINTIFF JANE TB DOE 36

653.    Plaintiff Jane TB Doe incorporates by reference the allegations contained in the

previous paragraphs of the Complaint.

654. Plaintiff Jane TB Doe was a minor at such times as sexual assault and other allegations set forth herein occurred and, as of the date of filing of the instant Complaint, is an adult.

655. Plaintiff Jane TB Doe at all times material herein was and is a resident of the state of Michigan.

656. Plaintiff Jane TB Doe has been a member of USA Gymnastics since approximately 2013.

657. During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane TB Doe by touching and digitally penetrating her vagina and anus while she was under the age of 18 without her consent or the consent of her parents.

658. Plaintiff Jane TB Doe competed in national competitions.

659. Plaintiff Jane TB Doe treated with Nassar between 2013 and 2016.

660. Plaintiff Jane TB Doe treated with Nassar between 2013 and 2016 at the Michigan State University Sports Medicine Clinic and at Nassar's private residence.

661. Beginning in approximately 2013, Nassar, while treating Plaintiff, would fondle Plaintiff's breasts, genitals and buttocks, and put his hands underneath her leotards and/or shorts.

662. Nassar committed this fondling of Plaintiff without gloves and without providing notice or warning to her or her parents, or obtaining consent from Plaintiff Jane TB Doe and/or her parents.

663. Nassar fondled Plaintiff Jane TB Doe and penetrated her anally and vaginally with an ungloved hand on numerous occasions.

664.    Plaintiff Jane TB Doe believes the conduct of Nassar was sexual assault, abuse, molestation and harassment performed for Nassar's sexual pleasure and gratification.

665.    As a result of Nassar's conduct, Plaintiff Jane TB Doe suffered and continues to suffer emotional distress and anxiety, among other issues.

666.    Plaintiff Jane TB Doe injuries include, among others, anxiety and depression, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**PLAINTIFF JANE KB DOE 37**

667.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane KB Doe by touching her genital area and digitally penetrating her vagina without Plaintiff's consent or the consent of her parents.

668.    Plaintiff Jane KB Doe treated with Nassar in his office at MSU Sports Clinic beginning in approximately 2011.

669.    Although Defendants had prior notice of abuse allegations, it failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

670.    Plaintiff Jane KB Doe was a minor at all times during her treatment with Nassar.

671.    Plaintiff Jane KB Doe presented to Nassar with complaints of injury to her back and other complaints suffered through her training in gymnastics.

672.    Nassar, by characterizing his activities as 'medical treatment' convinced Plaintiff Buchanan that his sexual assaults of her were in fact appropriate and necessary treatment for her injuries.

673.    Plaintiff Jane KB Doe was sexually assaulted and was a victim of nonconsensual vaginal and personal touching and penetration, abuse and molestation starting in 2011.

674.    The entire course of Nassar's conduct is subject to the 'continuous violation doctrine' entitling Plaintiff Buchanan to recover from damages resulting from all assaults.

675.    Nassar removed or maneuvered clothing of Plaintiff Buchanan without consent.

676.    Nassar under the guise of medical treatment at each appointment touched and penetrated Plaintiff Buchanan's vagina and genital area without consent and without gloves.

677.    Plaintiff Buchanan did not immediately understand Nassar's inappropriate conduct toward her and felt embarrassment and in fear of repercussions for her career if she spoke out negatively of Nassar.

678.    As a result of Nassar's conduct, Plaintiff Jane KB Doe suffered and continues to suffer emotional distress, anxiety and depression, among other issues.    Plaintiff sought professional counseling and medical care to address these ongoing issues.

679.    The entire course of Plaintiff Buchanan's treatment falls within the 'continuous violation doctrine' and is entitled to recovery.

680.    Plaintiff Jane KB Doe's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, betrayal, distrust, loss of self-esteem, disgrace, shame, fright, grief, humiliation, loss of enjoyment of life, all for which she has sought treatment, and has sustained and continues to sustain economic and emotional damages. Plaintiff Buchanan has subconsciously carried the effects of the abuse for many years and will continue experience its effects into the future.

681.    Plaintiff Jane KB Doe was a member of the USAG from June 2005 (level 3) through December 2014 (level 10).

**PLAINTIFF JANE MH DOE 38**

682.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane MH Doe by touching her genital area and digitally penetrating her vagina without Plaintiff's consent.

683.    Plaintiff Jane MH Doe treated with Nassar in his office at MSU Sports Clinic beginning in approximately 1998 until approximately 2010.

684.    Although Defendants had prior notice of abuse allegations, it failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

685.    Plaintiff Jane MH Doe when first treated was a minor.  The first incidences of abuse occurred while Plaintiff Holley was a student athlete at Michigan State University in approximately 2007.

686.    Plaintiff Jane MH Doe presented to Nassar with complaints of injury to her back and other complaints suffered through her training in gymnastics.

687.    Nassar, by characterizing his activities as 'medical treatment' convinced Plaintiff Holley that his sexual assaults of her were in fact appropriate and necessary treatment for her injuries.  As an MSU athlete, Plaintiff Jane MH Doe was required to treat with Nassar.

688.    Plaintiff Jane MH Doe was sexually assaulted and was a victim of nonconsensual vaginal and personal touching and penetration, abuse and molestation starting in approximately 2007.

689.    The entire course of Nassar's conduct is subject to the 'continuous violation doctrine' entitling Plaintiff Holley to recover from damages resulting from all assaults.

690.    Plaintiff Jane MH Doe began to realize the inappropriate and abusive nature of Nassar's conduct in approximately 2017 when others came forward publicly with stories of his

abuse.  Plaintiff began to remember her experiences with Nassar and realized he sexually

assaulted her under the guise of providing "treatment."

691.    Plaintiff Jane MH Doe subconsciously carried the effects of Nassar's abuse

throughout her entire life.  As a result of Nassar's conduct, Plaintiff suffered and continues to

suffer emotional distress, anxiety and depression, among other issues.

692.    As a result, Plaintiff Jane MH Doe has sought professional therapy to address

symptoms associated with Post-Traumatic Stress Disorder, fear and anxiety, shame and guilt

which stemmed from her interactions with Nassar.

693.    Plaintiff Jane MH Doe's injuries include, among others, shock, humiliation,

emotional distress and related physical manifestations thereof, betrayal, embarrassment, distress,

loss of self-esteem, disgrace, shame, fright, grief, humiliation, loss of enjoyment of life, and has

sustained and continues to sustain loss of earnings and earning capacity.

694.    Nassar did not wear gloves during the examinations of Plaintiff Holley.

695.    Plaintiff Jane MH Doe was a member of USAG from 1996 through 2006, and was

a member of the level 9 and level 10 Junior Olympic National Teams.

**PLAINTIFF JANE RS DOE 39**

696.    During Nassar's employment, agency, and representation with the Defendants,

Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane RS Doe by touching her

genital area and digitally penetrating her vagina without Plaintiff's consent or the consent of her

parents.

697.    Plaintiff Jane RS Doe treated with Nassar in his office at MSU Sports Clinic

beginning in approximately 2002.

698.    Although Defendants had prior notice of abuse allegations, it failed to warn

Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

699.   Plaintiff Jane KB Doe was a minor at all times during her treatment with Nassar.

700.   Plaintiff Jane RS Doe presented to Nassar with complaints of injury to her hamstring pulling from her pelvic bone and other complaints suffered through her training in gymnastics.

701.   Nasar inserted his bare hand into Plaintiff Jane RS Doe's vagina under the guise of providing "treatment."

702.   Plaintiff Jane RS Doe did not realize the inappropriate and abusive nature of Nassar's conduct until much later and recently as the news broke regarding Nassar.  Plaintiff began to remember her experiences with Nassar and realized he sexually assaulted her under the guise of providing "treatment."

703.   As a result of Nassar's conduct, Plaintiff Jane RS Doe suffered and continues to suffer emotional distress and anxiety, among other issues.

704.   Nassar, by characterizing his activities as 'medical treatment' convinced Plaintiff Schultz that his sexual assaults of her were in fact appropriate and necessary treatment for her injuries.

705.   Plaintiff Kelly Schultz was sexually assaulted and was a victim of nonconsensual vaginal and personal touching and penetration, abuse and molestation starting in 2002.

706.   The entire course of Nassar's conduct is subject to the 'continuous violation doctrine' entitling Plaintiff Schultz to recover from damages resulting from all assaults.

707.   Nassar did not wear gloves during the examinations of Plaintiff Schultz.

708.   Plaintiff Jane RS Doe's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, distrust, loss of

self-esteem, disgrace, shame, fright, grief, humiliation, loss of enjoyment of life, betrayal, and has sustained and continues to sustain loss of earnings and earning capacity.

709.    Plaintiff Jane RS Doe was a member of USAG from 1995 through 2007.

### JANE NLF-2 DOE 40

710.    From a young age, Plaintiff Jane NLF – 2 Doe ("Doe-2") was taught to obey authority, including doctors, without question and without complaint, regardless of the severity of pain, abuse and discomfort she experienced.

711.    Doe – 2 (DOB 1994) treated with Nassar at his office at MSU Sports Medicine Clinic in 2006 where he provided medical care and treatment.

712.    As such, Doe – 2 was a business invitee at the MSU Sports Medicine Clinic where she expected to receive medical care and treatment by Nassar, free of harm.

713.    Although MSU had prior notice of abuse allegations, it failed to warn Doe – 2 of the known or foreseeable dangers regarding complaints related to Nassar.

714.    Doe – 2 started training at Red Cedar Gymnastics in Lansing, Michigan in 2002 or 2003.

715.    Doe – 2 continued to train as a gymnast through 2006 and from approximately June 2007 through 2009 trained in diving with Haslett High School, dance and ballet.

716.    In the summer of 2006, Doe – 2 suffered a coccyx injury during after several hard falls at Boyne Area Gymnastics Dance, Boyne City, Michigan.

717.    Doe – 2's injuries included but were not limited to:  Right wrist TFCC derangement with sprain of the DURL, right Olecranon bone spur, Lumbar facet syndrome, Left ITB syndrome, Lumbago, Scoliosis, Short right leg, Lumbar Somatic Dysfunction, Thoracic Somatic Dysfunction, Cervical Somatic Dysfunction, Sacral Somatic Dysfunction, Innominate

Somatic Dysfunction, Pubic Somatic Dysfunction, Bilateral posterior hip Somatic Dysfunction, coccyx injury and low back injury.

718.    In 2005, Doe – 2 was referred to Nassar who came highly recommended by many in the gymnastics community at the local, national and international levels.

719.    In 2006, Nassar used his fingers to penetrate Doe – 2's anus and he digitally manipulated her tailbone.

720.    Nassar did not inform Doe – 2's mother or father prior to performing the aforesaid tailbone manipulation nor did Doe – 2 feel she had a choice in said treatment.

721.    Doe – 2 and her parents privately questioned the validity of the tailbone manipulation but did not believe it was wise to question Nassar given his reputation.

722.    Nassar treated Plaintiff for her injuries, including but not limited to, continuing low back pain and/or coccyx pain from approximately June 2005 through 2008.

723.    From 2006 through 2008, Nassar would massage Plaintiff's inner thighs and vaginal area while purportedly treating Plaintiff's injuries, including but not limited to, low back pain and/or coccyx pain.

724.    From 2006 through 2008, Nassar rubbed Plaintiff's vagina during multiple visits; unbeknownst to Plaintiff, Nassar was doing this for sexual gratification rather than legitimate medical treatment.

725.    Nassar misrepresented to Doe – 2 that this was the appropriate way to treat her injuries.

726.    Because of Nassar's reputation and Doe – 2 and her parents had no reason to doubt Nassar, as MSU, Twistars, and USAG represented him to be a reputable, ethical, and trustworthy doctor.

727.    Following the treatment recommended by Nassar and physical therapy, Doe – 2 continued to treat with Nassar at his office at MSU's Sports Medicine Clinic, which is located on MSU's East Lansing, Michigan campus.

728.    Doe – 2 treated with Nassar for her injuries from 2006 through 2008.

729.    All of Doe – 2's "treatments" occurred multiple times at Nassar's office at MSU.

730.    Nassar would instruct Doe – 2 to wear short shorts or a leotard for "treatment."

731.    Nassar would end or begin each "treatment" by sliding Doe – 2's clothing out of the way, touching and/or rubbing her genitals; upon information and belief, Nassar did so for sexual gratification.

732.    Nassar would not wear gloves during these "treatments."

733.    The State of Michigan Department of Licensing and Regulatory Affairs has promulgated rules related to Occupational Health Standards to prevent the spread of blood borne infectious diseases, including rules mandating the use of gloves when there is a possible exposure to vaginal secretions. Michigan Administrative Code, R. 325.70001 *et seq.*

734.    Nassar's decision to willfully violate these rules by not wearing gloves is indicative of his motive for self-gratification in his sexual abuse of Doe – 2.

735.    Doe – 2 did not treat and never intended to treat with Nassar for OB/GYN issues.

736.    Nassar did not give prior notice or obtain consent for digital penetration from Doe – 2 or Doe – 2's parents even though she was a minor at the time.

737.    Doe – 2 was a minor when the sexual abuse happened, as she did not reach the age of majority until 2009.

738.    Neither Doe – 2 nor Doe – 2's parents consented to any touching, rubbing, or digital penetration of Doe – 2's anus and vagina.

739.    As a result, from 2006 through 2008, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Doe – 2 by touching and rubbing her genital area without the use of gloves, and without Doe – 2's consent or the consent of Doe – 2's parents.

740.    Nassar's sexual assault, battery, abuse, and molestation of Doe – 2 by digitally penetrating her anus and rubbing her vagina without gloves occurred on numerous occasions.

741.    Nassar's conduct and actions taken against Doe – 2 constituted sexual assault, abuse, and molestation, and was undertaken for Nassar's pleasure and self-gratification.

742.    Nassar used his position of trust and confidence in an abusive manner, causing Doe – 2 to suffer a variety of injuries including shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

743.    Doe – 2 and her parents had no reason to suspect Nassar was anything other than a competent and ethical physician based on his affiliations with MSU, Twistars, and USAG, and their representations of Nassar therein.

744.    MSU learned that Nassar was being charged with a crime in the Fall of 2016; however, MSU failed or refused to notify Doe – 2 or anyone similarly situated to Doe – 2 of the same, even though it was reasonably foreseeable that the allegations against Nassar would become public and Doe – 2 and others like her would learn that the treatment they received was not treatment, but, instead, a sexual assault, and such information could cause, and did cause, emotional harm and damage.

745.    Doe – 2 first learned that allegations of sexual abuse had been brought forward against Nassar in approximately November of 2016, after she was exposed to the media releases concerning the allegations against Nassar.  It was then that Doe – 2 realized that his "treatments"

were not normal procedure, but, rather, a sexual assault, and violations of Plaintiff's rights, privacy and trust.

746.    Doe – 2 believes the conduct by Nassar was sexual assault, abuse, and molestation and for Nassar's pleasure and self-gratification.

747.    As a result of the assault, Plaintiff has struggled with feelings of embarrassment, disgust, humiliation, and deep sadness.

## JANE NLF – 4 DOE 41

748.    From a young age, Plaintiff Jane NLF – 4 Doe ("Doe – 4") was taught to obey authority, including doctors, without question and without complaint, regardless of the severity of pain, abuse and discomfort she experienced.

749.    Doe – 4 treated with Nassar at Great Lakes Gymnastics, Twistars, and his office at MSU Sports Medicine Clinic from 1988 – 1992 where he provided medical care and treatment.

750.    As such, Doe – 4 was a business invitee at Great Lakes Gymnastics, Twistars, and the MSU Sports Medicine Clinic where she expected to receive medical care and treatment by Nassar, free of harm.

751.    Although MSU had prior notice of abuse allegations, it failed to warn Doe – 4 of the known or foreseeable dangers regarding complaints related to Nassar.

752.    Doe – 4 was a gymnast player at Great Lakes Gymnastics/Twistars from 1988 – 1992.

753.    Doe – 4 suffered a tailbone injury after falling hard on the balance beam, and she was sent to Nassar because he was acting as Great Lakes Gymnastics/Twistars trainer.

754.    Doe – 4's injuries included but were not limited to: tailbone injury.

93

755.    Beginning in 1988 through 1992, Nassar used his fingers to penetrate Doe – 4's vagina and anus without consent at Twistars and MSU's Sports Medicine Clinic multiple times.

756.    Nassar did not inform Doe – 4's parents prior to performing the aforesaid vaginal and annual manipulation nor did Doe – 4 feel she had a choice in said treatment.

757.    Doe – 4 privately questioned the validity of vaginal and anal manipulation but did not believe it was wise to question Nassar given his reputation.

758.    Nassar treated Doe – 4 for her injuries, including but not limited to, continuing tailbone pain from approximately 1988 through 1992.

759.    From 1988 through 1992, Nassar would massage Doe – 4's inner thighs and digitally penetrate her anus and vagina while purportedly treating her injury.

760.    From 1988 through 1992, Nassar penetrated Doe – 4's vagina and anus during multiple visits; unbeknownst to Doe – 4, Nassar was doing this for sexual gratification rather than legitimate medical treatment.

761.    Nassar misrepresented to Doe – 4 that this was the appropriate way to treat her injuries.

762.    Because of Nassar's reputation and Doe – 4 and her parents had no reason to doubt Nassar, as MSU, Twistars, and USAG represented him to be a reputable, ethical, and trustworthy doctor.

763.    Following the treatment recommended by Nassar and physical therapy, Doe – 4 continued to treat with Nassar at his office at MSU's Sports Medicine Clinic, which is located on MSU's East Lansing, Michigan campus.

764.    Doe – 4 treated with Nassar for her injuries from 1988 through 1992.

765.    All of Doe – 4's "treatments" occurred multiple times at Twistars and Nassar's

office at MSU.

766.    Nassar would instruct Doe – 4's to strip naked or wear short shorts or a leotard for "treatment."

767.    Nassar would end or begin each "treatment" by sliding Doe – 4's clothing out of the way, penetrating, touching and/or rubbing her genitals; upon information and belief, Nassar did so for sexual gratification.

768.    Nassar would not wear gloves during these "treatments."

769.    The State of Michigan Department of Licensing and Regulatory Affairs has promulgated rules related to Occupational Health Standards to prevent the spread of blood borne infectious diseases, including rules mandating the use of gloves when there is a possible exposure to vaginal secretions. Michigan Administrative Code, R. 325.70001 *et seq.*

770.    Nassar's decision to willfully violate these rules by not wearing gloves is indicative of his motive for self-gratification in his sexual abuse of Doe – 4.

771.    Doe – 3 did not treat and never intended to treat with Nassar for OB/GYN issues.

772.    Nassar did not give prior notice or obtain consent for digital penetration from Doe – 4 or Doe – 4's parents even though she was a minor at the time.

773.    Doe – 4 was a minor when the sexual abuse happened, as she did not reach the age of majority until 1992.

774.    Nassar continued to abuse Doe – 4 after she reached the age of majority for 4 more years.

775.    Neither Doe – 4 nor Doe – 4's parents consented to any touching, rubbing, or digital penetration of Plaintiff's vagina.

776.    As a result, from 1988 through 1992, under the guise of treatment, Nassar

sexually assaulted, battered, abused, and molested Doe – 4 by penetrating, touching and rubbing her anus and vagina without the use of gloves, and without Plaintiff's consent or the consent of her parents.

777.    Nassar's sexual assault, battery, abuse, and molestation of Doe – 4 by penetrating and rubbing her anus and vagina without gloves occurred on numerous occasions.

778.    Nassar's conduct and actions taken against Doe – 4 constituted sexual assault, abuse, and molestation, and was undertaken for Nassar's pleasure and self-gratification.

779.    Nassar used his position of trust and confidence in an abusive manner, causing Doe – 4 to suffer a variety of injuries including shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

780.    Doe – 4 and her parents had no reason to suspect Nassar was anything other than a competent and ethical physician based on his affiliations with MSU, Twistars, and USAG, and their representations of Nassar therein.

781.    MSU learned that Nassar was being charged with a crime in the Fall of 2016; however, MSU failed or refused to notify Doe – 4 or anyone similarly situated to Plaintiff of the same, even though it was reasonably foreseeable that the allegations against Nassar would become public and Doe – 4 and others like her would learn that the treatment they received was not treatment, but, instead, a sexual assault, and such information could cause, and did cause, emotional harm and damage.

782.    Doe – 4 first learned that allegations of sexual abuse had been brought forward against Nassar in approximately September of 2016, after she was exposed to the media releases concerning the allegations against Nassar.  It was then that Plaintiff realized that his

"treatments" were not normal procedure, but, rather, a sexual assault, and violations of
Plaintiff's rights, privacy and trust.

783.    As a result of the assault, Doe – 4 has struggled with feelings of embarrassment,
disgust, humiliation, and deep sadness

### JANE SAF DOE 42

784.    That Jane SAF Doe received treatment from Nassar from approximately 1986
until 1997 then again in 2016.

785.    That she was enrolled at Great Lakes Gymnastics in Lansing from the age of
three (3) on and grew up with constant interaction with the staff and Nassar.

786.    That Jane SAF Doe was a member of USAG during the time period she treated
with Nassar.

787.    That Jane SAF Doe was between the ages of eight (8) and sixteen (16) at the
time that Nassar treated her for various ailments on well over one hundred (100) occasions.

788.    That the sexual molestation and abuse that this Plaintiff most vividly remembers
occurred during purposed treatment for a sciatic nerve problem.

789.    That Nassar would have Jane SAF Doe meet him in his secluded treatment room
to perform purported sciatic nerve treatment.

790.    Nassar would have Plaintiff lie face down on her stomach and massage his way
into sexually assault her.

791.    That he touched her inappropriately and applied painful digital pressure and
penetration without gloves and without notice.

792.    That this technique of sexual molestation and assault occurred more than twenty
(20) times and was primarily at the end of her association with Gymnastics.

793.    That this was all done under the guise of a legitimate technique to relieve her sciatic pain.

794.    That Jane SAFE Doe was re-acquainted with Nassar in 2016 when she had office visits with him for leg pain at the MSU Sports Medicine Clinic.

795.    That following the face to face interaction and physical examination by Nassar in 2016, that mirrored the earlier physical examinations, Jane SAF Doe experienced an extreme psychological reaction as the recollection and feelings of her prior sexual abuse was triggered.

796.    That Jane SAF Doe had psychologically damaging contact with Nassar in 2016, after USOC clearly had knowledge of complaints of sexual assault against Nassar and did nothing.

797.    That Nassar's molestations of this Plaintiff has caused extreme psychological trauma that will continue to result in psychological trauma long into the future.

## JANE BRS DOE 43, A MINOR, BY HER NEXT FRIEND JANE BR DOE

798.    That minor Plaintiff Jane BRS Doe was sexually molested by Dr. Nassar between the years of 2011 and 2016, from the age of nine years old (9) to fourteen (14) under the guise of legitimate medical treatment.

799.    That at all pertinent times, she was a paying member of USAG and participated in numerous USAG sanctioned events.

800.    That Jane BRS Doe was a Gymnast and her and her family knew of Nassar's reputation as a result of him being promoted and acclaimed as a renowned doctor for gymnasts.

801.    That this minor was led to believe the treatment she received was legitimate medical treatment.

802.    That the sexual assaults were done while seeking treatment from Nassar at the

MSU Sports Medicine Clinic as well as during follow-up visits at Larry Nassar's home.

803.    That Nassar would engage in inappropriate touching and ungloved digital penetration of the minor child.

804.    That if other individuals or a parent was in the room, Nassar would position himself in such a way that he could hide what he was doing.

805.    That Jane BR 2 Doe attended and competed in USA Gymnastics Inc., sponsored events and competitions.

806.    That Nassar sexually molested minor Jane BRS Doe on ten (10) to twelve (12) separate occasions.

807.    That many sexual assaults to this minor child occurred in 2015 and 2016 after OSOC had clear knowledge of sexual assault complaints against Nassar and did nothing.

808.    That Nassar's repeated molestation of this minor Plaintiff has caused psychological trauma and physical manifestations of psychological trauma that will continue long into the future.

**JANE ANT DOE 44, A MINOR, BY HER NEXT FRIEND JANE NT DOE**

809.    That minor Plaintiff Jane ANT Doe was sexually molested by Nassar at the MSU Sports Medicine Clinic location.

810.    That the sexual molestations occurred while receiving lower extremity treatment.

811.    The sexual molestations consisted of this Minor Plaintiff being inappropriately touched and digitally penetrated by Nassar with ungloved hands and without notice.

812.    That Plaintiff was between the ages of ten (10) and fourteen (14) when she received treatment with Nassar.

813.     That Jane ANT Doe had been a Gymnast and a paying member of Twistars in

Dimondale Michigan from approximately 2011 through 2013 where she began treatments with Nassar.

814.    That minor Jane ANT Doe was thereafter moved to Red Cedar Gym due to the abusive nature of John Geddert's training techniques.

815.    That Jane ANT Doe was a paying member of USAG from approximately 2011-2016 and was led to believe that USAG endorsed Nassar.

816.    That Jane ANT Doe was sexually assaulted in 2016, after USOC clearly had knowledge that Nassar had been accused of sexual assault, and USOC did nothing.

817.    That Nassar's molestations of this minor Plaintiff has caused psychological trauma that will continue to result in psychological trauma long into the future.

**JANE ILH DOE 45, A MINOR, BY HER NEXT FRIEND JANE LH DOE**

818.    That minor Plaintiff Jane ILH Doe was sexually molested by Dr. Nassar between the years of 2009 through 2016, from the age of eight years old (8) to twelve (14) under the guise of legitimate medical treatment.

819.    That at all pertinent times, she was a paying member of USAG and participated in USAG sanctioned events.

820.    That the sexual assaults were done while receiving "medical massages" before and after practices and competitions, during the stretching of the minors hamstrings, while receiving treatment for lower back pain, and treatment due to Nassar's claim that her hips were out of alignment due to an ankle injury.

821.    That Nassar would engage in inappropriate touching including ungloved digital penetration of the minor child without notice.

822.    That if other individuals or a parent was in the room, he would position himself

in such a way that he could hide what he was doing.

823.    That Jane ILH Doe attended and participated in USA Gymnastics Inc., sponsored events and competitions where Nassar would provide treatment and sexually molest the minor plaintiff.

824.    That Nassar provided hands-on treatment to minor Plaintiff and USAG member an estimated three hundred (300) times.  That he sexually molested her whenever he had the opportunity, which was on approximately one hundred (100) to two hundred (200) of those encounters.

825.    That Nassar sexually molested the minor at Twistars Gymnasium in Dimondale.

826.     That Nassar sexually molested the minor at USAG sanctioned competitions.

827.    That Nassar sexually molested the minor at the MSU Sports Medicine Clinic, where he would often instruct the family to enter through the back door.

828.    That Nassar sexually molested the minor in the basement of his residence in Holt, Michigan.

829.    That Nassar took special interest in the minor, gave her a t-shirt, and made her feel like she was getting special privileges by inviting her and her family to his home and letting them in the back door at the MSU clinic.

830.    That Nassar's repeated serial molestation of this minor Plaintiff has caused psychological trauma that will continue long into the future.

### PLAINTIFF JANE R.G. DOE 46

831.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane R.G. Doe by touching and her vagina, pelvis, and anus while she was under the age of 18 without her consent or the

consent of her parents.

832.    Plaintiff Jane R.G. Doe was a member of U.S.A. Gymnastics (USAG) since

2005 through 2011.

833.    Plaintiff Jane R.G. Doe was affiliated with USAG through Gedderts Twistars

USA.  Jane R.G. Doe was introduced to Nassar by coaching staff at Twistars and was treated

on-site, then Nassar requested Jane R.G. Doe to see him at the MSU Clinic.

834.    Plaintiff Jane R.G. Doe was a high-performing gymnast with a promising career

ahead of her.

835.    Plaintiff Jane R.G. Doe began receiving treatment from Nassar in 2007 when she

was 12 years old after injuring her elbow and back.  At all times relevant to this Complaint Jane

R.G. Doe was a minor.

836.    Nassar began inappropriate touchings and abuse almost immediately with Jane

R.G. Doe but was more aggressive and invasive when Jane R.G. Doe began seeing Nassar at the

Clinic.

837.    Nassar continued abusing Plaintiff Jane R.G. Doe every time she treated with

him by manually manipulating her pelvis, pubis, and hip areas without prior notice and without

gloves or lubricant under the guise of performing "treatment" for four years, until 2011.

838.    Nassar, by characterizing his activities as "medical treatments." convinced

Plaintiff that his sexual assaults of her were in fact appropriate and necessary to achieve a cure

for her medical problems.  Nassar was highly recommended because of his stature in the

gymnastics community, specifically with his involvement with the Olympic team and his

personal assistance at USGA sponsored events.

839.    Nassar abused Plaintiff Jane R.G. Doe at MSU's Sports Medicine Clinic and at

gymnastics meets sponsored by USAG held at, for instance, MSU's Jenison Field House,
Gedderts Twistars USA, Chicago Pier Event, and many others.

840.    Although Defendants had prior notice of abuse allegations, they failed to warn
Plaintiff Jane R.G. Doe of the known or foreseeable dangers regarding complaints related to
Nassar.

841.    Through her membership with the Gedderts Twistars USA, coaches affiliates
with USAG and other gymnasts affiliates with USAG suggested and encouraged Plaintiff Jane
R.G. Doe to treat with Nassar when she began sustaining gymnastics-related injuries.

842.    Plaintiff Jane R.G. Doe was physically injured by the repeated assaults and
suffered pain, discomfort, physical illness, severe emotional distress, depression, anxiety, post-
traumatic stress disorder, shock, humiliation, grief, embarrassment, loss of self-esteem, loss of
familial relationships, loss of enjoyment of life, suicidal tendency, faith confusion, and she will
continue suffering pain of mind and body due to the physical injuries sustained throughout the
course of over three years of consistent, and repetitive abuse at the hands of a once-trusted
medical professional.

**PLAINTIFF JANE TMB DOE 47**

843.    From a young age, Plaintiff Jane TMB Doe was taught to have the utmost
respect and deference to doctors, without question and without complaint, regardless of the
severity of pain, abuse and discomfort she experienced.  Plaintiff was a member of USA
Gymnastics from 1989 to 2000 and competed in gymnastics at the club, high school and
collegiate levels.

844.    During Nassar's employment, agency, and representation with the Defendants,
Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane TMB Doe by touching

and pushing on her vagina and labia without Plaintiff's consent.

845.    Plaintiff Jane TMB Doe (DOB 1982) treated with Nassar at his office at the

MSU Sports Medicine Clinic in 1997, and in 2003 and 2004 where he was supposed to provide

medical care and treatment, for her injured hip and ankle in 1997 and for her injured back in

2003 and 2004.

846.    As such, Plaintiff was a business invitee at the MSU Sports Medicine Clinic

where she expected to receive medical care and treatment by Nassar, free of harm.

847.    Although Defendants had prior notice of abuse allegations, they failed to warn

Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

848.    In 1997, Plaintiff was a minor, 14 years old.

849.    Plaintiff presented to Nassar with complaints of injuries and pain to her hip

sustained through walking with a "boot" due to a prior ankle injury. Nassar placed his ungloved

hand over Plaintiff's vagina, sexually molesting her.

850.    Nassar, by characterizing his activities as "medical treatments", convinced

Plaintiff that his sexual molestation of her was in fact appropriate and necessary to achieve a

cure for her medical problems.

851.    Plaintiff was also sexually molested under the guise of "medical treatments" by

Nassar during medical appointments in 2004, where she underwent "treatment" for back pain

due to a stress fracture in her back sustained during her membership on her college gymnastics

team.

852.    During the 1997 and 2004 appointments at Nassar's office at MSU, Nassar kept

his hand pushing and placed on Plaintiff's vagina and labia without prior notice and without

gloves or lubricant under the guise of performing "treatment."

853.    Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff.

854.    Nassar did not give prior notice or obtain consent for touching Plaintiff's genitals.

855.    Plaintiff did not treat or intend to treat with Nassar for issues related to obstetrics or gynecology.

856.    Plaintiff  believes the conduct by Nassar was sexual assault, abuse, and molestation and for Nassar's pleasure and self-gratification.

857.    As a result of the assault, Plaintiff has struggled with feelings of embarrassment, guilt, disgust, humiliation, deep sadness, depression, and such high anxiety which caused her to have to undergo counseling and to leave her job as a trained and licensed pelvic physical therapist and work in an entirely different field for substantially less pay, suffering economic damages. Subsequently Plaintiff was able to obtain a job as a pediatric physical therapist in the Los Angeles school system for yet further substantially less pay, suffering additional economic damages.

### PLAINTIFF JANE MLM DOE 48

858.    Plaintiff Jane MLM Doe was a member of USA Gymnastics beginning in 2001 until 2013, and a club gymnast until 2008 when she went to college. She treated with Nassar for back pain from 2007 through 2012.

859.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane MLM Doe by touching her genital area and digitally penetrating her vagina without Plaintiff's consent.

860.    Plaintiff Jane MLM Doe (DOB 1990) treated with Nassar at his office at MSU

Sports Medicine Clinic from 2007 to 2012 where he was supposed to provide medical care and treatment.

861.    As such, Plaintiff was a business invitee at the MSU Sports Medicine Clinic where she expected to receive medical care and treatment by Nassar, free of harm.

862.    Although Defendants had prior notice of abuse allegations, they failed to warn Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

863.    In 2007, Plaintiff was a minor, 17 years old.

864.    Plaintiff presented to Nassar with injuries to her back.

865.    Nassar, by characterizing his activities as "medical treatments", convinced Plaintiff that his sexual assaults of her were in fact appropriate and necessary to achieve a cure for her medical problems.

866.    Plaintiff was sexually assaulted over 30 times under the guise of "medical treatments" by  Nassar during medical appointments in 2007 to 2012.

867.    During the appointments at Nassar's office at MSU, Nassar digitally penetrated Plaintiff's vagina with his fingers without prior notice and without gloves or lubricant under the guise of performing "treatment."

868.    Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff's genitals.

869.    Plaintiff did not treat or intend to treat with Nassar for issues related to obstetrics or gynecology.

870.    Plaintiff believes the conduct by Nassar was sexual assault, abuse, and molestation and for  Nassar's pleasure and self-gratification.

871.    As a result of the assault, Plaintiff has struggled with feelings of embarrassment,

disgust, humiliation, guilt, and deep sadness.

 care and treatment.

## PLAINTIFF JANE MML DOE 49

872.    At all relevant times, Plaintiff Jane MML Doe was a young athlete participating in youth gymnastics at Bay Valley Gymnastics Club and was a member of USA Gymnastics Inc.

873.    During Nassar's employment, agency, or representation with Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff MML by penetrating her vaginal and/or anal cavities and groping her breasts and body, without her consent.

874.    From 1999 through 2002, Plaintiff Jane MML Doe treated with Nassar at the MSU Sports Medicine Clinic for back and/or hip injuries she had sustained participating in gymnastics for Defendants.

875.    Plaintiff Jane MML Doe was treated by Nassar at the MSU office at least eleven (11) times from approximately September 22, 1999 through December 29, 2002.

876.    During the first two appointments with Nassar in 1999, Plaintiff Jane MML Doe was 15 years old.

877.    During the next seven appointments with Defendant in 1999 and 2000, Plaintiff Jane MML Doe was 16 years old.

878.    During the tenth appointment with Defendant in 2001, Plaintiff Jane MML Doe was 17 years old.

879.    During the last and eleventh appointment with Nassar in 2002, Plaintiff Jane MML Doe was 19 years old.

880.    During the 11 appointments at Nassar's office at MSU from 1999 through 2002,

107

Nassar directed Plaintiff Jane MML Doe to disrobe, and then massaged her, including her breasts, and conducted what Nassar described as a "spinal evaluation" or "spinal manipulation," which involved digital vaginal and/or anal penetration without gloves or lubrication.

881.    Sometimes the "evaluation" or "manipulation" occurred when no one else was present in the examination room with Plaintiff Jane MML Doe and Nassar.

882.    Other times, one of Plaintiff Jane MML Doe's parents would be present, but Nassar would position himself so as to block their observation of the examination.

883.    Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff Jane MML Doe's vagina, anus, and/or breasts.

884.    Plaintiff Jane MML Doe did not treat or intend to treat with Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

885.    Shortly after her last appointment with Nassar, Plaintiff quit her gymnastics career.

886.    Based on Nassar's representations, Plaintiff Jane MML Doe believed the "treatment" she received to be legitimate medical procedures until after reports surfaced in or about September 2017 of similar allegations made by other women.

887.    Nassar was recommended to Plaintiff Jane MML Doe through her participation in youth gymnastic through USA Gymnastics, INC.

888.    Defendants referred Plaintiff Jane MML Doe to Nassar for the treatment.

889.    Nassar misrepresented to Plaintiff Jane MML Doe and Plaintiff's parents that this "treatment" was the appropriate way to treat Plaintiff Jane MML Doe's injuries.

890.    Because of Nassar's reputation claimed by Defendants, Plaintiff Jane MML Doe and her parents had no reason to doubt him to a reputable, ethical, and trustworthy doctor and professional.

891.    Nassar did not obtain consent from Plaintiff Jane MML Doe's parents for the treatment for the incidents in which she was a minor.

892.    Neither Plaintiff Jane MML Doe nor her parents consented to the "treatment" by Nassar or to any touching, rubbing, and/or penetration of Plaintiff's vagina, anus, and/or breasts.

893.    Nassar's conduct and actions taken against Plaintiff Jane MML Doe constituted sexual assault, abuse, and molestation, and was undertaken for Nassar's pleasure and self-gratification.

894.    Nassar, by characterizing his activities as 'medical treatment' convinced Plaintiff Jane MML Doe that his sexual assaults of her were in fact appropriate and necessary treatment for her injuries.

895.    Plaintiff Jane MML Doe was sexually assaulted and was a victim of nonconsensual vaginal and anal and personal touching and penetration, abuse and molestation starting in approximately 1999.

896.    The entire course of Nassar's conduct is subject to the 'continuous violation doctrine' entitling Plaintiff Jane MML Doe to recover from damages resulting from all assaults.

897.    Plaintiff Jane MML Doe began to realize the inappropriate and abusive nature of Nassar's conduct in approximately 2017 when others came forward publicly with stories of his abuse.  Plaintiff began to remember her experiences with Nassar and realized he sexually assaulted her under the guise of providing "treatment."

898.    Plaintiff Jane MML Doe subconsciously carried the effects of Nassar's abuse throughout her entire life.  As a result of Nassar's conduct, Plaintiff suffered and continues to suffer emotional distress, anxiety and depression, among other issues.

899.    As a result, Plaintiff Jane MML Doe has sought professional therapy to address symptoms associated with Post-Traumatic Stress Disorder, fear and anxiety, shame and guilt which stemmed from her interactions with Nassar.

900.    Plaintiff Jane MML Doe's injuries include, among others, shock, humiliation, emotional distress and related physical manifestations thereof, betrayal, embarrassment, distress, loss of self-esteem, disgrace, shame, fright, grief, humiliation, loss of enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

901.    Plaintiff Jane MML Doe was a member of USA Gymnastics from when he was a young child until approximately 2002.

902.    Despite knowing about Nassar's improper conduct,  Defendants failed or refused to notify Plaintiff Jane MML Doe or anyone similarly situated to her.

903.    Because  Defendants took no action to investigate  and took no corrective action, Nassar sexually assaulted, abused, and molested Plaintiff Jane MML Doe penetrating her vaginal and/or anal cavities and groping her breasts, without the use of gloves or lubricant.

904.    Plaintiff has been forced to relive the trauma of the sexual assaults.

## PLAINTIFF JANE MLJ DOE 50

905.    During Nassar's employment, agency, and representation with the Defendants, Nassar sexually assaulted, battered, abused, and molested Plaintiff Jane MLJ Doe by touching her genital area and digitally penetrating her vagina, anus and mouth without Plaintiff's consent.

906.    Although Defendants had prior notice of abuse allegations, they failed to warn

110

Plaintiff of the known or foreseeable dangers regarding complaints related to Nassar.

907.    That starting at a young age, Plaintiff Jane MLJ Doe, was a competitive gymnast.

908.    That Plaintiff Jane MLJ Doe was a member of USAG since she was approximately 8 years old.

909.    Plaintiff Jane MLJ Doe was a dues-paying member of USAG.

910.    In 1997, Plaintiff Jane MLJ Doe injured her back while a student and gymnast at Michigan State University ("MSU").

911.    Plaintiff Jane MLJ Doe's coach referred her to Nassar, touting him as well-known and highly reputable in treating gymnasts.

912.    That under the guise of medical treatment, Nassar sexually assaulted, battered, molested, harassed, stalked, and terrorized Plaintiff Jane MLJ Doe, on the campus of Defendant, MSU.

913.    Nassar touched, grabbed, massaged, and fondled Plaintiff JANE DOE MLJ's breasts with his bare hands over her clothes without notice, permission, or consent under the guise of medical treatment.

914.    Nassar digitally penetrated Plaintiff JANE DOE MLJ's mouth with at least two fingers without notice, permission, or consent, under the guise of medical treatment.

915.    Nassar touched, prodded, and contacted Plaintiff JANE DOE MLJ's pelvic area with his bare hands without notice, permission, or consent, under the guise of medical treatment.

916.    While Plaintiff Jane MLJ Doe, was lying on her stomach on an examination table, Nassar digitally penetrated Plaintiff JANE DOE MLJ's vagina with at least two fingers without notice, permission, or consent,   under the guise of medical treatment.

917.    On the campus of Defendant, MSU, while Plaintiff Jane MLJ Doe, was lying on

her stomach on an examination table, Nassar digitally penetrated Plaintiff JANE DOE MLJ's anus with at least two fingers without notice, permission, or consent, under the guise of medical treatment.

918.   Nassar did not wear gloves or use lubricant.

919.   That Nassar's conduct caused Plaintiff Jane MLJ Doe, to experience vaginal spotting.

920.   That Nassar's conduct caused Plaintiff Jane MLJ Doe, to experience bleeding from her vagina.

921.   That under the guise of medical treatment, Nassar abruptly and without notice, permission, or consent, digitally penetrated Plaintiff JANE MLJ DOE's vagina and anus and fondled Plaintiff Jane MLJ Doe's body.

922.   That under the guise of medical treatment, Nassar also digitally penetrated the Plaintiff Jane MLJ Doe's mouth.

923.   As a result of Nassar's conduct, Plaintiff Jane MLJ Doe, developed psychological injuries, including but not limited to depression and other psychological injuries and has treated since that time for these psychological injuries.

924.   Plaintiff Jane MLJ Doe learned of the criminal allegations against Nassar in late 2017 and realized that what she had struggled to rationalize as an invasive and thoroughly unpleasant doctor visit was not appropriate medical treatment, but illegal sexual assault. She eventually made a police report to Michigan State University police.

925.   Plaintiff Jane MLJ Doe has struggled with feelings of embarrassment, disgust, humiliation, and deep sadness. She has nightmares about Nassar and the assault she endured.

926.   To this day, Plaintiff Jane MLJ Doe experiences high anxiety, anger, and panic

attacks that interfere with daily life and has been forced to relive the trauma of the sexual assaults.

## FRAUDULENT CONCEALMENT ALLEGATIONS

927.    USOC committed Fraudulent Concealment by committing Fraud by concealing the existence of Plaintiffs' claims and that Plaintiffs had a cause of action against Nassar and/or Defendant USOC at the time of the sexual assaults by Nassar (as Defendant USOC's employee or agent) and by making a material representation(s) to Plaintiffs involving a past or existing fact by:

a.  making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.  making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c.  making the statement, explaining, that his acts and/or conduct was "checking your sternum;

d.  making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e.  making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

f.  making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and making a statement, explaining to Plaintiff and another medical professional that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and

unexpected sexual assaults by Nassar.

928.    The material representation(s) to Plaintiffs by Nassar were false, in that he was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

929.    When Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

930.    Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs, in that Plaintiffs:

a.   would believe that the "treatments" were in fact "treatments;"

b.   would believe that the "treatment[s]" were proper, appropriate, and legitimate;

c.   would not believe that they had been sexually assaulted;

d.   should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

e.   would continue the "treatment[s]" so that he could continue to sexually assault them;

f.   would not question and/or report the conduct to appropriate authorities; and

g.   would not reasonably believe and not be aware of a possible cause of action that they have against Nassar and/or USAG.

931.    Plaintiffs acted in reliance upon Nassar's material representation(s), in that Plaintiffs reasonably believed that the "treatments" were in fact "treatments; "reasonably believed that the "treatments" were proper, appropriate, and legitimate; reasonably did not believe that they had been sexually assaulted; believed that they should continue the "treatment[s];" and did not believe that they should question and/or report the conduct to appropriate authorities; and did

not reasonably believe that they had and were not aware of a possible cause of action that they had against Nassar and/or USAG.

932.    Such fraudulent concealment reasonably prevented Plaintiffs from knowing that they had a cause of action against the Defendant USOC and the Defendant Officers and Directors.

933.    Plaintiffs discovered USOC's cover-up of its knowledge of Nassar's criminal behavior that occurred for years prior when Ropes and Gray issued its December 10, 2018 Investigative Report, at the earliest.

934.    Plaintiffs are otherwise free from fault, have not contributed to **their** own injuries, and **have** at all times made good faith efforts to mitigate **their** own considerable damages.

935.    Further discovery will reveal additional acts and omissions by Defendants, which will prove Defendants' pattern and practice of fraudulent concealment.

936.    Defendants' failure to report, document, or investigate the complaints against Nassar, and concealment of the sexual misconduct of Nassar, constitute fraudulent concealment that equitably tolls any proffered statute of limitation that may otherwise bar the recovery sought by Plaintiffs herein.

937.    Defendants are estopped from relying on any statute of limitations defense because they continued to refute and deny reports and allegations of sexual misconduct and assault perpetrated by Nassar and concealed sexual misconduct, suppressed multiple complaints of sexual misconduct by Nassar, and failed to disclose known dangerous behaviors and serious increased risks to Plaintiffs.

938.    Defendants represented that Nassar was a competent medical professional and entrusted him with overseeing the medical care and wellbeing of minor athletes, including Plaintiffs, instead of upholding their duty to protect those in Nassar's care from sexual assault

and abuse.

939.    Defendants also owed a heightened duty of care to Plaintiffs who were minors at the time they received training and treatment services because their parents/guardians were obligated to entrust Plaintiffs to the Defendants' care for training and medical treatment.

940.    Therefore, each of the Defendants stood in an *in loco parentis* relationship with Plaintiffs.

941.    Given this special relationship, Defendants had a duty to disclose and to warn and protect the athletes and patients who sought training and treatment at **their** facili**ties** and with a doctor/trainer provided by Defendants.

## V.    CLAIMS AGAINST USOC DEFENDANTS

### COUNT I: TITLE IX VIOLATIONS
### 20 U.S.C. §1681(a), *et seq. against USOC*
### *Plaintiffs v USOC and Individual USOC Defendants*

942.    Title IX states, "No person in the United States shall on the basis of sex be … subject to discrimination under any education program or activity receiving Federal financial assistance …."

943.    Plaintiffs are "persons" covered by the Title IX statutory language.

944.    USOC provides educational programs and activities and receives federal financial assistance and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §§ 1681(a), 1687.

945.    Plaintiffs participated in "activities" and/or "programs" that were part of the operations of  USOC. 20 U.S.C. § 1687.

946.    Defendant USOC is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

947.    Title IX covers all programs of an organization providing educational programs, and extends to sexual harassment and assault by employees, students, and third parties.

948.    Nassar's actions and conduct were carried out under one of MSU's programs, which provides medical treatment to students, athletes, and the public.

949.    Nassar's conduct and actions toward Plaintiffs, including nonconsensual digital vaginal penetration, touching Plaintiffs' buttocks and genitals constitute sex discrimination under Title IX.

950.    The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful conduct that injured Plaintiffs.

951.    As early as 2015, based on the complaints alleged above, an "appropriate person" at USOC, including but not limited to Defendants, Blackmun, Ashley and Buendorf, had actual knowledge of the sexual assault, abuse, and molestation committed by Nassar upon female athletes training under the auspices of the USOC.

952.    The USOC Individual Defendants were "appropriate persons" within the meaning of Title IX because, in their positions, they had the authority to address and/or report the discrimination, request investigations, and/or institute corrective measures.

953.    Defendants Blackmun, Ashley and Buendorf had supervisory authority over Nassar with the ability to ban him, discipline, suspend or terminate Nassar, or to direct or cause others to ban, discipline, suspend or terminate Nassar.

954.    The response of the named USOC Defendant Officers to reports of sexual abuse, was clearly unreasonable in light of the known circumstances.

955.    The USOC Individual Defendants failed to carry out their duties to investigate and

take corrective action under Title IX following multiple complaints of sexual assault, abuse and molestation which they became aware of in 2015.

956.    The USOC and Individual USOC Defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by failing to investigate and address multiple allegations of sexual harassment and abuse as required by Title IX and failing to institute corrective measures to prevent Nassar from violating and sexually abusing other female patients.

957.    The sexual abuse of each Plaintiff was so severe, pervasive and objectively offensive that it deprived her of an educational activity, including medical care and each Plaintiff has suffered all the injuries and damages alleged in this Complaint.

## COUNT II: SEX DISCRIMINATION
## PATIENT PROTECTION AND AFFORDABLE CARE ACT §1557, 42 U.S.C. §18116
### *Plaintiffs against Defendants USOC and USOC Trustees*

958.    Section 1557 of the Patient Protection and Affordable Care Act, which is codified at 42 U.S.C. § 18116, provides that: Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under . . . [T]itle IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this [T]itle (or amendments). The enforcement mechanisms provided for and available under . . . [T]itle IX shall apply for purposes of violations of this subsection.

959.    Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. prohibits

sex discrimination in programs that receive federal financial assistance.

960.    Plaintiffs, as women, have a right under 42 U.S.C. § 18116 to receive health care services free from discrimination on the basis of sex.

961.    Plaintiffs are "individuals" within the meaning of 42 U.S.C. § 18116.

962.    Defendant USOC receives Federal financial assistance within the meaning of 42 U.S.C. § 18116 because it receives federal financial assistance such as credits, subsidies, or contracts of insurance.

963.    The USOC Defendants employed the services of Nassar, doctors, and other professional and non-professional health care providers who cared for Plaintiffs from approximately 1997 to 2016, and held themselves out to the public as competent, careful, and experienced in the care and treatment of patients.

964.    Plaintiffs received medical care from Nassar at USOC sanctioned facilities, and at other locations where Nassar provided services as an USOC employee.

965.    Plaintiffs expected to receive medical care for their injuries without being sexually assaulted and without fear of sexual harassment or assault.

966.    Nassar's conduct and actions toward Plaintiffs, that being nonconsensual and assaultive digital vaginal penetration, touching of Plaintiffs' vaginal area, touching of Plaintiffs' genitals and buttocks constitute sex discrimination under Title IX and 42 U.S.C. § 18116, and otherwise denied Plaintiff the benefits of appropriate medical care.

967.    The USOC Individual Defendants, and others knew or should have known of Nassar's abuse yet failed to take corrective action.

968.    USOC is vicariously and/or contractually liable for the actions of their principals, employees, agents, and representatives.

969.     The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful conduct which injured Plaintiffs.

970.     Blackmun, Ashley and Buendorf were in a position to take appropriate action upon learning of concerns of misconduct in 2015 and failed to take appropriate action to protect Plaintiffs.

971.     The conduct of the USOC Defendants described above constitutes sex discrimination against Plaintiffs.

972.     The USOC Defendants perpetrated this discrimination with malice, deliberate disregard for, or deliberate or reckless indifference to Plaintiffs' rights.

973.     The USOC Defendants' failure to promptly and appropriately investigate, respond to, and remedy the sexual assaults after they received repeated notice of Nassar's wrongdoing subjected Plaintiffs and countless others to further sexual harassment and sexual assaults as well as a sexually hostile environment—effectively denying them all access to health programs or activities at USOC, and effectively denying them the benefits of appropriate medical care.

974.     In the alternative, the actions or inaction of the USOC Defendants was deliberately indifferent or so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages

### COUNT III: VIOLATION OF BODILY INTEGRITY 42 U.S.C. § 1983
*Plaintiffs against USOC and Individual USOC Defendants*.

975.     Plaintiffs, as females, are members of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

976.     Plaintiffs also enjoy the constitutionally protected Due Process right guaranteed

by the Fourteenth Amendment to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

977.    At all relevant times the MSU Individual Defendants were acting under color of federal law.

978.    The USOC has been endowed by the Federal Government with the exclusive power to serve a unique national, administrative, adjudicative, and representational role and as a private organization on whom the Government has bestowed inherently public powers and responsibilities its actions are subject to constitutional limits.

979.    The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the Individual Defendants' positions should have known.

980.    At all relevant times, USOC and Defendant Officers and Directors had the ultimate responsibility and authority to train and supervise their employees, subordinates, agents, and/or representatives and the representatives of the NGBs in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice, failed to do so with deliberate indifference.

981.    The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful conduct which injured Plaintiffs.

982.    As a matter of custom, policy, and/or practice, the USOC and Defendants and Defendant Officers and Directors had and have the ultimate responsibility and authority to investigate complaints against their employees, subordinates, and representatives and the representatives of the NGBs from all individuals including, but not limited to students, visitors,

faculty, staff, or other employees, agents, and/or representatives, and failed to do so with deliberate indifference.

983.    At all relevant times, Defendants had a duty to prevent sexual assault, abuse, and molestation on their campus and premises, that duty arising under the above-referenced constitutional rights, as well as established rights pursuant to Title IX.

984.    USOC at all relevant times had an unconstitutional custom, practice, and/or policy of failing to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which caused and may have contributed to a continuation of the sexually hostile environment.

985.    By failing to prevent the above-mentioned sexual assault, abuse, and molestation upon Plaintiffs, and by failing to appropriately respond to reports of Nassar's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, the USOC Individual Defendants are liable to Plaintiffs pursuant to 42 U.S.C. §1983.

986.    The USOC Individual Defendants' conduct and failures to act shocks the conscience deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

987.    The USOC Defendant Officers and Directors tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Nassar, with the result that Nassar could violate the rights of persons such as Plaintiffs with impunity.

988.    The constitutional right alleged in this Count was clearly established and Defendants knew or should have known that their conduct violated this constitutional right.

989.    As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs suffered, among other things, humiliation, degradation, intimidation, confusion and emotional distress.

### COUNT IV: FAILURE TO TRAIN AND SUPERVISE 42 U.S.C. §1983
*Plaintiffs against USOC and Individual USOC Individual Defendants*

990.    USOC and USOC Defendant Officers and Directors have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives including Nassar and all faculty and staff regarding their duties toward students, faculty, staff, and visitors.

991.    USOC and USOC Defendant Officers and Directors failed to train and supervise their employees, agents, and/or representatives including all faculty and staff, regarding the following duties:

a)  Perceive, report, and stop inappropriate sexual conduct on campus;

b)  Provide diligent supervision over student-athletes and other individuals;

c)  Report suspected incidents of sexual abuse or sexual assault;

d)  Ensure the safety of all students, faculty, staff, and visitors to MSU's campuses premises;

e)  Provide a safe environment for all students, faculty, staff, and visitors to Defendant USOC's premises free from sexual harassment; and

f)  Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

992.    USOC and USOC Defendant Officers and Directors had supervisory authority over Nassar.

993.    The Individual USOC Officers and Directors are personally liable to Plaintiffs

because they sanctioned, directed or actively participated in the commission of the wrongful conduct which injured Plaintiffs.

994.    USOC and USOC Defendant Officers and Directors failure to adequately supervise or investigate Nassar, especially after USOC knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatments" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

995.    USOC and USOC Defendant Officers and Directors failed to train Nassar regarding inappropriate touching, informed consent and chaperone practices, which was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

996.    USOC and USOC Defendant Officers and Directors failed to adequately train coaches, trainers, medical staff, and others regarding the duties, which led to violations of Plaintiffs' rights.

997.    As a result, USOC and USOC Defendant Officers and Directors deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

998.    As a direct and/or proximate result of USOC and USOC Defendant Officers and Directors actions and/or inactions, Plaintiffs suffered, among other things, humiliation, degradation, intimidation, confusion and emotional distress.

## COUNT V: RESPONSIBLE CORPORATE OFFICER DOCTRINE
### *Plaintiffs against Individual USOC Individual Defendants*

999.    The responsible corporate officer doctrine was developed by the United States Supreme Court to hold corporate officers in responsible positions of authority personally liable for violating strict liability statutes protecting the public welfare. *United States v. Dotterweich*

(1943) 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48; and *United States v. Park* (1975) 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489.

1000.   Under the Ted Stevens Amateur Sports Act, 36 U.S.C. §§220501, et seq. (hereinafter, "Ted Stevens Act") USOC had a mandatory obligation to ensure that before granting NGBs, including USAG and USOC, a sanction to host National or International events, that they provide "proper medical supervision will be provided for athletes who will participate in the competition." 36 U.S.C. §§220525(b)(4)(E).

1001.   The Ted Stevens Act is a federal statute protecting the public welfare.

1002.   The USOC Officers and Directors held positions of **responsibility** and authority in the USOC.

1003.   The USOC Officers and Directors had the ability to prevent the violation of the Ted Stevens Act.

1004.   The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful conduct which injured Plaintiffs.

1005.   The USOC Officers and Directors failed to prevent the violation of the Ted Stevens Act.

1006.   As a breach of their duties as responsible corporate Officers, Defendant USOC officers and Directors caused all the injuries and damages alleged in this Complaint.

### COUNT VI: VIOLATION OF THE SAFE SPORT ACT, 18 U.S.C. § 2255, *et. seq.*
### *Plaintiffs against all USOC Defendants*

1007.   The Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017 (herein known as the "Safe Sport Act") was written into law on or about February 14, 2018.

125

1008.   The Safe Sport Act amended the Ted Stevens Olympic and Amateur Sports Act to include among the purposes of the U.S. Olympic Committee to promote a safe environment in sports that is free from abuse, including emotional, physical and sexual abuse of any amateur athlete.

1009.   The Safe Sport Act expands those who must do mandatory reporting of child abuse to include "an adult who is authorized, by a national governing body, a member of a national governing body, or an amateur sports organization that participates in interstate or international amateur athletic competition, interact with a minor or amateur athlete at an amateur sports organization facility or at any event sanctioned by a NGB, a member of a NGB, or such amateur sports organization."

1010.   The report of child abuse must be done "as soon as possible" which within the statute means within a twenty-four (24) hour period.

1011.   USOC Defendants became aware of reports that Plaintiffs had been the victims of sexual abuse prior to or since the Safe Sport Act came into effect.

1012.   USOC Defendants did not comply with the mandatory reporting required by the Safe Sport Act and did not report the abuse to local law authorities within 24 hours of passage of the bill, on February 15, 2018, or still have failed to report to law enforcement, as required by law, even to this day.

1013.   The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful conduct which injured Plaintiffs.

1014.   The Safe Sport Act was enacted to protect amateur athletes from serial predatory abusers who prey upon young and naïve athletes.  As the legislative intent is to protect those

athletes in the future who may become victims to the serially abuser, it is apparent the Safe Sport

Act applies to all previously reported abuses and not simply those that occur after February 14,

2018.

1015. USOC Defendants have not reported Plaintiffs abuse to authorities.

1016. Plaintiffs are informed and believe, and on that basis allege, that USOC

Defendants have failed to follow the mandate of timely reporting all of the claims to law

enforcement within 24 hours of learning facts that gave rise to the suspicion of abuse prior to or

after the enactment of the Safe Sport Act on February 14, 2018.

1017. As a result of the above-described conduct, Plaintiffs have suffered and continue

to suffer great pain of mind and body, shock, emotional distress, physical manifestations of

emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and

loss of enjoyment of life; have suffered and continue to suffer and were prevented and will

continue to be prevented from performing daily activities and obtaining the full enjoyment of life;

will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur

expenses for medical and psychological treatment, therapy, and counseling.

### COUNT VII: GROSS NEGLIGENCE
*Plaintiffs against All USOC Defendants*

1018. Plaintiffs reallege and incorporate by reference the allegations contained in the

previous paragraphs.

1019. USOC and its Officers and Directors owed the Plaintiffs a duty to use due care to

ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with

their employees, representatives, and/or agents.

1020. The above-named Plaintiffs are or were amateur athletes within the meaning of 36

U.S.C. § 220501(b)(1) and participated in USOC sanctioned events (events held by USAG) and

were knowledgeable of and in some cases referred to Nassar through USOC affiliations.

1021.    Nassar owed to Plaintiffs a duty to use due care in his capacity as an employee, representative, and/or agent of USOC

1022.    By seeking medical treatment from Nassar in his capacity as an employee, agent, and/or representative of USOC, a special, confidential, and fiduciary relationship between the Plaintiffs and Nassar was created, resulting in Nassar owing Plaintiffs a duty to use due care.

1023.    USOC's failure to adequately supervise Nassar was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to the USOC.

1024.    The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful conduct which injured Plaintiffs.

1025.    Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant USOC was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to the USOC Plaintiffs.

1026.    Defendant USOC's conduct demonstrated a willful disregard for necessary precautions to reasonably protect the USOC Plaintiffs' safety.

1027.    After a major sexual abuse scandal hit the headlines in 2010, the USOC and its Officers and Directors recognized that it was their duty to implement safeguards to prevent sexual violence against young amateur athletes on a nationwide enterprise level and regardless of the athlete's affiliation with the USOC or one of its NGBs.

1028.    The USOC wrongfully failed to implement its nationwide plan on an enterprise level which would have protected all young United States athletes from sexual violence until

2017.

1029.  Defendant USOC's conduct as described above, demonstrated a willful disregard for substantial risks to the USOC Plaintiffs.

1030.  USOC and its Officers and Directors breached duties owed to Plaintiffs and were grossly negligent when they conducted themselves by actions described above, including but not limited to their failure to notify its member athletes as early as 1998, and their failure to notify MSU about the reasons for Nassar's separation from USOC and more broadly the issues surrounding sexual abuse in gymnastics and warning signs and reporting requirements. Said acts were committed with reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

1031.  As a direct and/or proximate result of Defendants actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization to address the mental anguish and despair caused by Defendants' actions.

### COUNT VIII: NEGLIGENCE
### *Plaintiffs against All USOC Defendants*

1032.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1033.  USOC and its Officers and Directors owed Plaintiffs a duty of ordinary care to

ensure their safety and freedom from sexual assault, abuse, and molestation while being treated by their employees, representatives, and agents.

1034.  Plaintiffs as amateur athletes as defined by 36 U.S.C. § 220501(b)(1) had a reasonable expectation that the USOC was recommending competent and ethical physicians and trainers for medical treatment who would carry out said treatment without sexual assault, abuse, and molestation

1035.  As amateur athletes as defined by 36 U.S.C. § 220501(b)(1), and by seeking medical treatment from Nassar in his capacity as an employee, agent, and/or representative of USOC, a special, confidential, and fiduciary relationship between Plaintiffs and USOC and its Officers and Directors and Plaintiffs and Nassar was created, resulting in Defendants and Nassar owing the aforementioned Plaintiffs a duty to use ordinary care.

1036.  Nassar owed the USOC Plaintiffs a duty of ordinary care in carrying out medical treatment.

1037.  USOC's failure to adequately train and supervise Nassar breached the duty of ordinary care

1038.  USOC's failure to properly investigate, address, and remedy complaints regarding sexual abuse

1039.  The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful conduct which injured Plaintiffs.

1040.  Nassar's conduct was a breach of ordinary care.

1041.  USOC's failure to inform the USOC Plaintiffs and the public of the allegations and concerns leading to Nassar's separation from USOC was a breach of ordinary care.

1042.   Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs was a breach of the duty to use ordinary care.

1043.   After a major sexual abuse scandal hit the headlines in 2010, the USOC and its Officers and Directors recognized that it was their duty to implement safeguards to prevent sexual violence against young amateur athletes on a nationwide enterprise level and regardless of the athlete's affiliation with the USOC or one of its NGBs.

1044.   The USOC wrongfully failed to implement its nationwide plan on an enterprise level which would have protected all young United States athletes from sexual violence until 2017.

1045.   As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization to address the mental anguish and despair caused by Defendants' actions.

## COUNT IX: VICARIOUS LIABILITY
### *Plaintiffs against USOC Defendants*

1046.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1047.   Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails

to do so.

1048.   Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

1049.   Nassar was an employee, agent, and/or servant of USOC or was under their complete control or active supervision at all relevant times alleged above.

1050.   USOC and its Officers and Directors are vicariously liable for the actions of Nassar as described above that were performed during his employment, representation, or agency with USOC and while he had unfettered access to young female athletes.

1051.   The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful conduct which injured Plaintiffs.

1052.   As a direct and/or proximate cause of Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization to address the mental anguish and despair caused by Defendants' actions.

## COUNT X: EXPRESS/IMPLIED AGENCY
### *Plaintiffs against All USOC Defendants*

1053.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1054.   An agent is a person who is authorized by another to act on its behalf

1055.   USOC intentionally or negligently made representations that Nassar was their employee, agent, and/or representative.

1056.   Based on those representations, Plaintiffs reasonably believed and relied upon the belief that Nassar was acting as an employee, agent, and/or representative of USOC and its Officers and Directors.

1057.   Plaintiffs were injured as a result of Nassar's sexual assault, abuse, and molestation as described above carried out through his employment, agency, and/or representation with USOC.

1058.   Plaintiffs were injured because they relied on Defendant USOC to provide employees or agents who would exercise reasonable skill and care

1059.   The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful conduct which injured Plaintiffs.

1060.   As a direct and/or proximate cause of Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USOC Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization to address the mental anguish and despair caused by Defendants'

actions.

## COUNT XI: NEGLIGENT SUPERVISION
### *Plaintiffs against USOC Defendants*

1061.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1062.  Defendant USOC had a duty to provide reasonable supervision of its employee, agent, and/or representative, Nassar, while he was in the course of his employment, agency and/or representative of USOC and while he interacted with young female athletes including Plaintiffs.

1063.  It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs, unless properly supervised

1064.  USOC and its Officers and Directors knew or reasonably should have known of Nassar's conduct and/or that Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults.

1065.  USOC and its Officers and Directors breached its duty to provide reasonable supervision of Nassar, and its failure permitted Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs.

1066.  The sexual abuse occurred while Nassar was acting in the course of his employment, agency and/or representation of USOC.

1067.  USOC tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel or discipline Nassar, with the result that Nassar could violate the rights of persons such as Plaintiffs with impunity.

1068.  The Individual USOC Officers and Directors are personally liable to Plaintiffs

because they sanctioned, directed or actively participated in the commission of the wrongful conduct which injured Plaintiffs.

1069. As a direct and/or proximate result of Defendants' negligent supervision, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization to address the mental anguish and despair caused by Defendants' actions.

## COUNT XII: NEGLIGENT FAILURE TO WARN OR PROTECT
### *Plaintiffs against USOC Defendants*

1070. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1071. Given the direct or indirect knowledge of sexual abuse in youth sports and in particular gymnastics, it was reasonably foreseeable that sexual abuse of minors may occur if proper procedures were not taken by USOC and its Officers and Directors.

1072. USOC knew or should have known that Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

1073. Defendant USOC had direct and/or constructive knowledge as to the dangerous conduct of Nassar and failed to act reasonably and responsibly in response.

1074. Defendant USOC knew or should have known that Nassar previously committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

1075.   USOC and its Officers and Directors had a duty to warn or protect the USOC Plaintiffs (its members) and others in Plaintiffs' situation against the risk of injury by Nassar.

1076.   The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Nassar in his capacity as employee, agent, and/or representative of Defendant USOC and the USOC Plaintiffs.

1077.   Defendant USOC breached said duty by failing to warn Plaintiffs and/or by failing to take reasonable steps to protect the USOC Plaintiffs from Nassar.

1078.   After a major sexual abuse scandal hit the headlines in 2010, the USOC and its Officers and Directors recognized that it was their duty to implement safeguards to prevent sexual violence against young amateur athletes on a nationwide enterprise level and regardless of the athlete's affiliation with the USOC or one of its NGBs.

1079.   The USOC wrongfully failed to implement its nationwide plan on an enterprise level which would have protected all young United States athletes from sexual violence until 2017.

1080.   The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful conduct which injured Plaintiffs.

1081.   Defendants failed to warn its members about prior complaints regarding Nassar.

1082.   Defendants breached its duties to protect Plaintiffs by failing to detect and/or uncover evidence of sexual abuse and sexual assault, investigate Nassar, adjudicate and suspend and/or ban Nassar from USOC affiliation and USOC sanctioned events.

1083.   Defendants failed to adequately screen, counsel and/or discipline Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and

responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendant USOC, resulting in violations of the USOC Plaintiffs.

1084.  Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs from Nassar's conduct.

1085.  As a direct and/or proximate result of Defendants' negligent failure to warn or protect, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization to address the mental anguish and despair caused by Defendants' actions.

## COUNT XIII: NEGLIGENT FAILURE TO TRAIN OR EDUCATE
### *Plaintiffs against USOC Defendants*

1086.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1087.  Defendants breached their duty to take reasonable protective measures to protect the Plaintiffs and other individuals from the risk of childhood sexual abuse and/or sexual assault by Nassar, such as the failure to properly train or educate Plaintiffs and other individuals (including minors) about how to avoid such a risk.

1088.  USOC failed to implement reasonable safeguards to:

    a)  Prevent acts of sexual assault, abuse, and molestation by Nassar; and

b)  Avoid placing Nassar in positions where he would have unsupervised contact and interaction with Plaintiffs and other young athletes.

1089.  Defendants USOC failed to train or educate their members regarding the foreseeability and danger of sexual abuse by adults in authority positions.

1090.  The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful conduct which injured Plaintiffs.

1091.  After a major sexual abuse scandal hit the headlines in 2010, the USOC and its Officers and Directors recognized that it was their duty to implement safeguards to prevent sexual violence against young amateur athletes on a nationwide enterprise level and regardless of the athlete's affiliation with the USOC or one of its NGBs.

1092.  The USOC wrongfully failed to implement its nationwide plan on an enterprise level which would have protected all young United States athletes from sexual violence until 2017.

1093.  As a direct and/or proximate result of Defendant's negligent failure to train or educate, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity; and have required and will continue to require treatment, therapy and counseling.

### COUNT XIV:  NEGLIGENT RETENTION
*Plaintiffs against USOC Defendants*

1094.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1095.   Defendants had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

1096.   Defendant USOC and its Officers and Directors were negligent in the retention of Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report, and address complaints about his conduct of which they knew or should have known.

1097.   Defendants were negligent in the retention of Nassar when after they discovered, or reasonably should have discovered Nassar's conduct which reflected a propensity for sexual misconduct.

1098.   The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful conduct which injured Plaintiffs.

1099.   Defendant's failure to act in accordance with the standard of care resulted in Nassar gaining access to and sexually abusing and/or sexually assaulting the USOC Plaintiffs as well as an unknown number of other individuals.

1100.   The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Nassar created a foreseeable risk of harm to Plaintiffs as well as other minors and young adults.

1101.   As a direct and/or proximate result of Defendant's negligent retention, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress,

embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization to address the mental anguish and despair caused by Defendants' actions.

### COUNT XV: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### *Plaintiffs against USOC Defendants*

1102.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs

1103.   Defendant USOC and its Officers and Directors allowed Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

1104.   A reasonable person would not expect Defendants to tolerate or permit their employee, agent, or representative to carry out sexual assault, abuse, or molestation.

1105.   Defendants held Nassar in high esteem and acclaim which in turn encourage

1106.   Plaintiffs and others to respect and trust Nassar and seek out his services and to not question his methods or motives.

1107.   Defendants protected Nassar in part to bolster its national and international reputation in the gymnastics community.

1108.   A reasonable person would not expect Defendants to be incapable of supervising Nassar and/or preventing Nassar from committing acts of sexual assault, abuse and molestation.

1109.   Defendant USOC's conduct as described above was reckless and outside the bounds of civilized society

1110.   The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful

conduct which injured Plaintiffs.

1111. As a direct and/or proximate result of Defendant USOC's conduct, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization to address the mental anguish and despair caused by Defendants' actions.

## COUNT XVI:  FRAUD AND MISREPRESENTATION
### *Plaintiffs against USOC Defendants*

1112. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1113. Specifically, Plaintiffs incorporate the allegations contained in Fraudulent Concealment Allegations set forth in this Complaint

1114. From approximately 1996 to summer 2015, and thereafter Defendants represented to Plaintiffs and the public that Nassar was a competent, ethical, and safe physician

1115. By representing that Nassar was a team physician and athletic physician at MSU and a National Team Physician with USAG, Defendant USOC and its Officers and Directors represented to Plaintiffs and the public that Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Nassar.

1116. The representations were false when they were made as Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of other

individuals

1117.   Additionally, complaints were made to Defendants, either directly or through its agents yet Defendant did not contact their members, including Plaintiffs, or MSU, or any other clubs, or organizations affiliated with USAG and Nassar to inform them of the allegations and potential harm to Plaintiffs and others

1118.   Plaintiffs relied on the assertions of Defendants and several Plaintiffs continued to seek treatment of Nassar in the wake of known concerns and dangers.

1119.   Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of Defendant's fraudulent misrepresentations regarding Nassar.

1120.   The Individual USOC Officers and Directors are personally liable to Plaintiffs because they sanctioned, directed or actively participated in the commission of the wrongful conduct which injured Plaintiffs.

1121.   As a direct and/or proximate result of Defendant USOC's fraudulent misrepresentations, Plaintiffs suffered discomfort, bleeding, urinary tract infections, bacterial infections, and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life; were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity; and have required and will continue to require treatment, therapy, counseling, and hospitalization to address the mental anguish and despair caused by Defendants' actions.

## VI.    DAMAGES

1122.   Plaintiffs reallege and incorporate by reference the allegations contained in the

preceding paragraphs.

1123.   As a direct and/or proximate result of Defendants' actions and/or inactions stated above, Plaintiffs suffered discomfort and continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1124.   The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiffs' Constitutional and Federal rights as well as the common and/or statutory laws of the State of Colorado, and the United States District Court has jurisdiction to hear and adjudicate said claims.

1125.   In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiffs have and continue to suffer irreparable harm as a result of the violations.

WHEREFORE, Plaintiffs request this Court and the finder of fact to enter a Judgment in Plaintiffs' favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award Plaintiffs all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount the Plaintiffs are entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

a)      Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses,

loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiffs' Constitutional, Federal, and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

b)      Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c)      Reasonable attorney fees, interest, and costs; and

d)      Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

Dated:  March 26, 2019

**RESPECTFULLY SUBMITTED,
PLAINTIFFS,
By Their Attorneys,**

/s/ Vance R. Andrus
Vance R. Andrus (CO Bar No. 30764)
Aimee H. Wagstaff (CO Bar No. 36819)
ANDRUS WAGSTAFF, P.C
7171 West Alaska Drive
Lakewood, CO 80226
Telephone: (303) 376-6360
Facsimile: (303) 376-6361
vance.andrus@andruswagstaff.com
aimee.wagstaff@andruswagstaff.com

Kimberly A. Dougherty (MA Bar No. 658014)
Lisa Lee (MA Bar No. 684631)
ANDRUS WAGSTAFF, P.C.
19 Belmont Street
South Easton, MA 02375
Telephone: (508) 230-2700
Facsimile: (303) 376-6361
kim.dougherty@andruswagstaff.com
lisa.lee@andruswagstaff.com

ROBERT J LANTZY, ESQ.
BUCKFIRE & BUCKFIRE, PC
29000 Inkster Road, Ste. 150
Southfield, MI 48034
Telephone: (248) 569-4646
Facsimile: (248) 415-1528
robert@buckfirelaw.com
*Attorneys for Plaintiffs JANE RGC DOE 1,*
*JANE MLG DOE 2, and JANE LVB DOE 3.*

DONNA M. MACKENZIE, ESQ.
OLSMAN MACKENZIE PEACOCK &
WALLACE, PC
2684 W. Eleven Mile Rd.
Berkley, MI 48072
Telephone: (248) 591-2300
Facsimile: (248) 591-20304
dmackenzie@olsmanlaw.com
*Attorneys for Plaintiffs Jane GK Doe 4; Jane BC*
*Doe 5; Jane AC Doe 6, a minor, by Next Friend*
*John Doe AA; Jane JA Doe 7; Jane PH Doe 8, a*
*minor, by Next Friend Jane Doe PJ; Jane SM Doe*
*9; Jane ME Doe 10; Jane KJ Doe 11; and Jane RK*
*Doe 12.*

ROBERT H. DARLING (P25523)
Robert H. Darling, PLLC
217 Ann Arbor Road, Suite 302
Plymouth, MI  48170
(734) 738-6597
 rdarling@robertdarlinglaw.com
*Attorneys for Plaintiffs Jane MPW Doe 13*
*and Jane KN Doe 14*

Joseph N. Fraser (P74419)
Law Offices of Johnston, Sztykiel & Hunt, P.C.
3250 W. Big Beaver Rd, Ste. 500
Troy MI, 48084
P: 248-641-1800/F:248-641-3845
jfraser@jshlawmi.com
*Counsel for Jane MPW Doe 13, Jane KN Doe 14,*
*and Jane KM Doe 15*

Jennifer B. Salvatore (P66640)
SALVATORE PRESCOTT & PORTER, PLLC
105 E. Main Street
Northville, MI 48167
(248) 679-8711
Salvatore@spplawyers.com
*ATTORNEY FOR PLAINTIFF: JANE AC DOE 16,*
*a minor, by her next friend L.C*

Michael A. Cox (P43039)
Jackie J. Cook (P68781)
The Mike Cox Law Firm, PLLC
17430 Laurel Park Drive North, Suite 120E
Livonia, MI 48152
Telephone: (734) 591-4002
jcook@mikecoxlaw.com
*Attorneys for Plaintiff Jane K.K. Doe 20*

GREGORY M. BEREZNOFF (P29104)
LAW OFFICES OF BEREZNOFF & LITTLE
2684 W. Eleven Mile Rd.
Berkley, MI 48072
Telephone: (248) 543-1920 / Fax: (248) 543-2533
gblaw1@aol.com
*Attorney for Plaintiffs Jane CP Doe 35 and Jane*
*TB Doe 36*

DAVID L. ZOGLIO (P56600)
LAW OFFICES OF DAVID L. ZOGLIO
209 South Bridge Street
Grand Ledge, MI 48837
psblegal@yahoo.com
(517) 925-1378/Fax (517) 925-1380
*Attorney for Plaintiff Jane TB Doe 36*

Mary Pat Rosen (MI Bar P34992)
David W. Christensen (MI Bar P11863)
CHARFOOS & CHRISTENSEN, P.C.
26622 Woodward Avenue, Suite 100
Royal Oak, MI 48067
Telephone: (313) 875-8080
Facsimile: (248) 399-0351
dwchristensen@c2law.com
mprosen@c2law.com
*ATTORNEYS FOR PLAINTIFFS Jane KB Doe 37,*
*Jane MH Doe 38 and Jane RS Doe 39*

146

DRIGGERS, SCHULTZ & HERBST
Mark K. Schwartz
2600 W. Big Beaver Road, Ste. 550
Troy, MI 48084
Tel: (248)649-6442
Fax: (248)649-6442
MSchwartz@DriggersSchultz.com
*Attorneys for Plaintiff Jane C.T. Doe 21*

Michael S. Krzak
Matthew M. Rundio
KRZAK RUNDIO LAW GROUP, LLC
30 N. LaSalle, Suite 1402
Chicago, IL 60602
Tel: (312)736-1111
Fax: (312)736-1112
Mike@krlawgroup.com
Matt@krlawgroup.com
*Attorneys for Plaintiff Jane C.T. Doe 21*

GARY L. BENDER (P31557)
MURPHY & SPAGNUOLO, P.C.
2123 University Park Dr., Ste. 130
Okemos, MI 48864
Tel: (517) 351-2020
Fax: (517) 351-4420
gbender@mbspclaw.com
*Attorneys for Plaintiffs JANE RAC DOE 23; JANE RAD DOE 24; JANE RAE DOE 25; JANE RAF DOE 26; JANE RAG DOE 27; JANE RAH DOE 28, a minor by her next friend C.S.*

RICHARD A. CASCARILLA (P32364)
MURPHY & SPAGNUOLO, P.C.
2123 University Park Dr., Ste. 130
Okemos, MI 48864
Tel: (517) 351-2020
Fax: (517) 351-4420
gbender@mbspclaw.com
*Attorneys for Plaintiffs JANE RAC DOE 23; JANE RAD DOE 24; JANE RAE DOE 25; JANE RAF DOE 26; JANE RAG DOE 27; JANE RAH DOE 28, a minor by her next friend C.S.*

147

Jordan K. Merson
Jaclyn M. Ponish
MERSON LAW, PLLC
150 East 58th Street, 34th Floor
New York, NY 10155
Tel: (212) 603-9100
Fax: (347) 441-4171
jmerson@mersonlaw.com
*Attorneys for Plaintiffs JANE M.N. DOE 17;
JANE B.D. DOE 18; JANE L.D. DOE 19*

PAUL H. GRANT (P72906)
PLANNING WITH PURPOSE, INC
2031 – 196th St SW, Suite B-201
Lynnwood, WA 98036
T (425) 939-9948 / F (800) 569-4004
paul@planningwithpurposeinc.com
*Attorney for Jane R.G. Doe 46*

MATTHEW A. FERRI (P71439)
LAW OFFICE OF MATTHEW A. FERRI, PLLC
6001 N. Adams Road, Suite 135
Bloomfield Hills, Michigan 48304
T (248) 409-0256 / F: (248) 409-0266
matt@ferrilawpllc.com
*Attorney for Jane R.G. Doe 46*

STEVEN A. LEE (P77013)
NEUMANN LAW GROUP
300 East Front Street, Suite 445
Traverse City, Michigan 49684
Tel: (231) 221-0050
Fax: (231) 221-0051
steve@neumannlawgroup.com
*Attorneys for Plaintiffs Jane TMB Doe 47 and
Jane MLM Doe 48*

Jessica Rose Ross (P82397)
Gower Law PLC
514 E. Midland St.
Tel: (989) 450-3286
Fax: (989)894-0100
jessica@gowerlaw.com
*Attorneys for Plaintiff Jane MML Doe 49*

Debra A. Freid (P33078)
Freid, Gallagher, Taylor & Assoc., P.C.
604 S. Jefferson Ave.
Saginaw, MI 48607
Tel: (989) 754-0411
Fax: (989) 754-3584
fgt@fgt-law.com
*Attorney for Jane KRA Doe 32*

Nicholas Roumel (P37056)
Nacht & Roumel, P.C.
101 N. Main St., Ste. 555
Ann Arbor, MI 48014
nroumel@nachtlaw.com
(734) 663-7550
*Attorney for Plaintiff Jane JJF Doe 23*

Efstathios T. Kiousis P-46573
Kiousis Law, P.C.
1985 W Big Beaver #300
Troy, MI 48084
248-550-0023
email: stk@kiousislaw.com
*Attorney for Plaintiff MLJ Doe 50*

Jami Jones (P64720)
JAMI JONES PLLC
43494 Woodward Ave. Suite 200
Bloomfield Hills, MI 48302
Telephone: (248) 745-1000
Facsimile: (248) 221-5599
jjones@idealjustice.com
*Attorneys for Plaintiffs Jane SAF Doe 42,
Jane BRS Doe 43, by Next Friend Jane BR
Doe, Jane ANT Doe 44, by Next Friend Jane
NT Doe, Jane ILH Doe 45 by Next Friend Jane
LH Doe*

Tiffany R. Ellis (P81456)
Jeffrey T. Stewart (P24138)
SEIKALY, STEWART, & BENNETT, P.C.
30445 Northwestern Hwy, Suite 250
Farmington Hills, MI 48334
248-785-0102
tre@sslawpc.com
jts@sslawpc.com
*Attorneys for Plaintiffs Jane A.W. Doe 33 and Jane A.G. Doe 34*

Wendy M. Schiller-Nichols (P61673)
Matthew J. Heos (P73786)
THE NICHOLS LAW FIRM, PLLC
3452 East Lake Lansing Road
East Lansing, Michigan 48823
(517) 432-9000
wsnichols@nicholslaw.net
mheos@nicholslaw.net
*Attorneys for Jane NLF-2 Doe 40 and Jane NLF-4 Doe 41*

Mark Bernstein (56528)
Rebecca Sposita (P69424)
Michael Battersby (29012)
31731 Northwestern Hwy, Ste. 333
Farmington Hills, MI 48334
(248)  538-5922
rsposita@sambernsein.com
*Attorneys for Plaintiffs Jane ALC Doe 29, Jane BH Doe 30 and Jane DC Doe 31*